SANDRA APPLETON *v*. BOARD OF EDUCATION OF
THE TOWN OF STONINGTON ET AL.
(SC 16137)

McDonald, C. J., and Borden, Katz, Palmer and Vertefeuille, Js.

Argued April 27—officially released August 15, 2000

*Michael C. Deakin,* for the appellants (defendants).

*Gilbert Shasha,* with whom, on the brief, was *Juri E. Taalman,* for the appellee (plaintiff).

*Opinion*

VERTEFEUILLE, J. The issue in this certified appeal is whether the Appellate Court properly concluded that the defendants were not entitled to summary judgment on the plaintiff's claims for (1) intentional infliction of emotional distress, and (2) tortious interference with contractual relations. Following our grant of certification; *Appleton* v. *Board of Education,* 249 Conn. 927, 733 A.2d 847 (1999); the defendants, the board of education of the town of Stonington (board), Cherri Rifenburg, the principal of Deans Mill School in Stonington, and Anthony Vacca, assistant principal of Deans Mill School, appealed from the Appellate Court's judgment reversing the trial court's rendering of summary judgment for the defendants on the second and third counts of the plaintiff's complaint. *Appleton* v. *Board of Education,* 53 Conn. App. 252, 730 A.2d 88 (1999). We reverse in part the judgment of the Appellate Court.

The Appellate Court's opinion provides the following undisputed facts. "The plaintiff was a tenured teacher who had a contract with the board that began in 1963. Beginning in September, 1995, Rifenburg voiced her displeasure with the plaintiff because she believed that the plaintiff failed to monitor a student properly concerning attendance at an after school program. The particular incident involved a situation in which one of the plaintiff's students boarded a school bus for home when he was supposed to be attending the after school program. The student's parents, who were not at home at the time, registered a complaint with the school.

"Subsequently, the plaintiff's competency as a teacher was questioned by the defendants. On September 15, 1995, Rifenburg and a school psychologist met with the plaintiff in her classroom following a report by another teacher that the plaintiff was acting in a strange manner. During this period, Vacca and Rifenburg expressed concern about the plaintiff's health.

"On September 18, 1995, Rifenburg informed the plaintiff that she would be placed on a paid leave of absence. Subsequently, a series of discussions and negotiations arose between the interim superintendent of schools, the board's attorney, counsel for the Connecticut Education Association . . . the president of the Stonington Education Association, the plaintiff's union representative and the plaintiff. The plaintiff submitted to two psychological evaluations at the defendants' request. The evaluations indicated that the plaintiff was capable of returning to work. As a result of the negotiations, a memorandum of agreement was drafted and signed by the parties. As part of the agreement, the plaintiff agreed to sign a letter of resignation. On February 5, 1996, the plaintiff submitted a signed letter of resignation to the interim superintendent of schools, which was to be effective in June, 1996, the close of the school year. The plaintiff was allowed to return to work as a curriculum assistant until her resignation was effective." *Appleton* v. *Board of Education*, supra, 53 Conn. App. 255–56.

After her resignation, the plaintiff brought this action alleging breach of contract against the board, intentional infliction of emotional distress against all three defendants, and tortious interference with contractual relations against Rifenburg and Vacca. The trial court granted the defendants' motion for summary judgment on all three counts of the plaintiff's complaint. The plaintiff then appealed to the Appellate Court, which affirmed the rendition of summary judgment on the

breach of contract claim, but reversed the entry of summary judgment on the claims for intentional infliction of emotional distress and tortious interference with contractual relations. Id., 268. We granted certification to appeal limited to the following issue: "Did the Appellate Court properly conclude that, under the circumstances of this case, the defendant was not entitled to summary judgment on the plaintiff's claims for (1) intentional infliction of emotional distress and (2) tortious interference with contractual relations?" *Appleton* v. *Board of Education*, supra, 249 Conn. 927.

"The standards governing our review of a trial court's decision to grant a motion for summary judgment are well established. Practice Book § 384 [now § 17-49] provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . *Miller* v. *United Technologies Corp.*, 233 Conn. 732, 744–45, 660 A.2d 810 (1995). In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . Id., 745. The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law; *D.H.R. Construction Co.* v. *Donnelly*, 180 Conn. 430, 434, 429 A.2d 908 (1980); and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact. Practice Book § 381 [now § 17-46]. . . . *Suarez* v. *Dickmont Plastics Corp.*, 229 Conn. 99, 105, 639 A.2d 507 (1994). . . . *Hertz Corp.* v. *Federal Ins. Co.*, 245 Conn. 374, 380–81, 374 A.2d 820 (1998)." (Internal quotation marks omitted.) *Rivera* v. *Double A Transportation, Inc.*, 248 Conn. 21, 24–25, 727 A.2d 204 (1999).

I

The defendants contend first that the Appellate Court improperly concluded that they were not entitled to summary judgment on the plaintiff's claim for intentional infliction of emotional distress. Specifically, they claim that: (1) the plaintiff's resignation from her employment is fatal to her claim for intentional infliction of emotional distress; and (2) the conduct alleged in the plaintiff's complaint and affidavit is not actionable because it was not extreme and outrageous. We agree with the second of these contentions. Therefore, we need not consider the defendants' contention that the plaintiff's resignation was fatal to her claim for intentional infliction of emotional distress.

"In order for the plaintiff to prevail in a case for liability under . . . [intentional infliction of emotional distress], four elements must be established. It must be shown: (1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe." (Internal quotation marks omitted.) *Petyan* v. *Ellis*, 200 Conn. 243, 253, 510 A.2d 1337 (1986). Whether a defendant's conduct is sufficient to satisfy the requirement that it be extreme and outrageous is initially a question for the court to determine. *Bell* v. *Board of Education*, 55 Conn. App. 400, 410, 739 A.2d 321 (1999). Only where reasonable minds disagree does it become an issue for the jury. Id.

Liability for intentional infliction of emotional distress requires conduct that exceeds " 'all bounds usually tolerated by decent society . . . .' " *Petyan* v. *Ellis*, supra, 200 Conn. 254 n.5, quoting W. Prosser & W. Keeton, Torts (5th Ed. 1984) § 12, p. 60. "Liability has been

found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!' " 1 Restatement (Second), Torts § 46, comment (d), p. 73 (1965). "Conduct on the part of the defendant that is merely insulting or displays bad manners or results in hurt feelings is insufficient to form the basis for an action based upon intentional infliction of emotional distress." *Mellaly* v. *Eastman Kodak Co.*, 42 Conn. Sup. 17, 19, 597 A.2d 846 (1991).

The conduct of the defendants in the present case is described in the plaintiff's affidavit in opposition to the defendant's motion for summary judgment. Rifenburg's opposing affidavit does not raise any genuine issue of material fact concerning the defendants' conduct. The plaintiff complains that Rifenburg: "made condescending comments to [her] in front of [her] fellow colleagues questioning [her] vision and ability to read"; telephoned the plaintiff's daughter, representing that the plaintiff "had been acting differently" and should take a few days off from work; and telephoned the police, who came to the school and escorted the plaintiff out of the building to her car. The plaintiff also asserted in her affidavit that she was subjected to two psychiatric examinations at the request of the board, and that she was forced to take a suspension and a leave of absence and, ultimately, forced to resign.

These occurrences may very well have been distressing and hurtful to the plaintiff. They do not, however, constitute extreme and outrageous conduct within the meaning of the precedents to which we referred previously. In fact, this court has noted that "it is not patently unreasonable for an employer to remove a

discharged employee from its premises under a security escort." *Parsons* v. *United Technologies Corp.*, 243 Conn. 66, 89, 700 A.2d 655 (1997) (upholding trial court's granting of motion to strike claim for negligent infliction of emotional distress based on circumstances of employee's termination where employee escorted out of building by security after termination); see also *Toth* v. *Square D Co.*, 712 F. Sup. 1231, 1238 (D.S.C. 1989) (holding that it was not unreasonable for employer to escort former employee off of premises after termination and that such action did not provide basis for claim of intentional infliction of emotional distress). As the defendants' actions in the present case were not so atrocious as to exceed all bounds usually tolerated by decent society, their conduct is insufficient to form the basis of an action for intentional infliction of emotional distress.[1] The Appellate Court's conclusion to the contrary cannot be sustained.

## II

Two of the defendants, Rifenburg and Vacca, further claim that the Appellate Court improperly concluded that they were not entitled to summary judgment on the plaintiff's claim for tortious interference with her employment contract with the board. Specifically, they contend that: (1) the plaintiff did not suffer any actual loss as a result of the alleged interference with her employment contract; and (2) she failed to make the requisite showing that they had acted outside the scope of their employment for personal gain. Because we agree with the first of these two claims, it is not necessary that we reach the second.

"A claim for tortious interference with contractual relations requires the plaintiff to establish (1) the existence of a contractual or beneficial relationship, (2)

---

[1] Although we find the defendants' conduct insufficient to be actionable, we do not condone their treatment of a longtime colleague and teacher.

the defendants' knowledge of that relationship, (3) the defendants' intent to interfere with the relationship, (4) the interference was tortious, and (5) a loss suffered by the plaintiff that was caused by the defendants' tortious conduct." *Collum* v. *Chapin*, 40 Conn. App. 449, 452, 671 A.2d 1329 (1996). "Unlike other torts in which liability gives rise to nominal damages even in the absence of proof of actual loss . . . it is an essential element of the tort of unlawful interference with business relations that the plaintiff suffers actual loss." *Taylor* v. *Sugar Hollow Park, Inc.*, 1 Conn. App. 38, 39, 467 A.2d 935 (1983). Therefore, in order to survive a motion for summary judgment the plaintiff must allege an "actual loss" resulting from the improper interference with her contract. *Herman* v. *Endriss*, 187 Conn. 374, 377, 446 A.2d 9 (1982). "[T]he tort is not complete unless there has been actual damage suffered." *Goldman* v. *Feinberg*, 130 Conn. 671, 675, 37 A.2d 355 (1944).

Two facts are dispositive of the issue of whether the plaintiff suffered any actual loss. First, in its decision, the Appellate Court upheld the trial court's ruling that the plaintiff's resignation was voluntary. *Appleton* v. *Board of Education*, supra, 53 Conn. App. 260. Whether that finding was clearly erroneous is not an issue certified for review by this court. Therefore, we will not disturb the Appellate Court's decision upholding the trial court's finding that the plaintiff's resignation was voluntary. Practice Book § 84-9 ("[t]he issues which the appellant may present are limited to those raised in the petition for certification, except where the issues are further limited by the order granting certification"); *State* v. *Torrence*, 196 Conn. 430, 433, 493 A.2d 865 (1985) (stating that "[t]he only questions that we need consider are those squarely raised by the petition for certification"). Second, during her leave of absence and

prior to and including the date of her resignation, the plaintiff was paid fully in accordance with her contract.[2]

Because the plaintiff voluntarily resigned and was compensated fully until the effective date of her resignation, she has failed to show any actual loss that she suffered as a result of the conduct of Rifenburg and Vacca. The absence of any actual loss is fatal to her claim for tortious interference with contractual relations.

The judgment of the Appellate Court is reversed in part and the case is remanded to that court with direction to affirm the judgment of the trial court with respect to the plaintiff's claims for intentional infliction of emotional distress and tortious interference with contractual relations; the judgment is affirmed in all other respects.

In this opinion the other justices concurred.

---

[2] In her complaint, the plaintiff alleged that the defendants' conduct caused her to lose "earnings and benefits and career economic loss . . . ." In Rifenburg's affidavit, which was submitted in support of the defendants' motion for summary judgment, Rifenburg indicated, however, that the plaintiff was placed on a paid leave of absence. The plaintiff's objection to the defendants' motion for summary judgment and her affidavit in support of that objection did not refute or challenge Rifenburg's statement that the plaintiff had received all of her pay and benefits while on the leave of absence. Therefore, we must accept as accurate the defendants' representation that the plaintiff was fully compensated until her voluntary resignation.

