[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
 FACTS
The plaintiff, Marisela Marrero, filed a three count complaint against the defendant, Yale University, on September 7, 2000. This action arises out of injuries and damages which the plaintiff allegedly sustained when the defendant required her to pay tuition which it claimed that she owed the defendant or be expelled from Yale College, a division of the defendant, and not be permitted to graduate.
In 1996, Marisela Marrero, the plaintiff, applied and was admitted as an undergraduate to Yale College. The plaintiff was granted financial aid and loans by the defendant. The plaintiff alleges that when she reached age twenty-one,[1] a trust fund in the amount of $275,218[2] became available to her[3] and she disclosed the existence of this trust fund to the defendant. The plaintiff alleges that in response to this information, the defendant informed the plaintiff that unless she paid the defendant the sum of $109,530.45[4] by February 16, 2000, the plaintiff would be expelled from Yale College and not be allowed to graduate. As a result, the plaintiff alleges that she was forced to pay the defendant the sum of $109,530.45.[5]
Count one of the plaintiffs complaint alleges theft, claiming that the sum the plaintiff was forced to pay the defendant was greater than the sum she owed the defendant. Count two, which incorporates paragraphs one through twelve of count one, alleges violation of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq., claiming that the defendant engaged in unfair and deceptive acts and practices within the meaning of § 42-110b.[6] Count three, which incorporates paragraphs one through twelve of count one, alleges intentional infliction of emotional distress claiming that the conduct of the defendant was extreme and outrageous and carried out with the knowledge that it would cause the plaintiff to suffer emotional distress.
The defendant filed its motion for summary judgment on December 4, CT Page 4915 2001. The plaintiff filed her memorandum in opposition to the defendant's motion for summary judgment on January 2, 2002. The defendant's reply brief was filed on January 4, 2002.
 DISCUSSION
"Practice Book [§ 17-49] provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact. . . ." (Bracket in original; citations omitted; internal quotation marks omitted.) Appleton v. Board of Education, 254 Conn. 205, 209,757 A.2d 1059 (2000).
I Whether the Defendant Committed Theft When The Defendant Required The Plaintiff To Return Funds
In its motion for summary judgment, the defendant argues that the sum the defendant required the plaintiff to repay was the exact amount the plaintiff owed the defendant. The defendant argues that when the plaintiff initially applied for financial aid from Yale, she incorrectly filled out Free Application for Federal Aid forms, neglecting to disclose the existence of a trust fund which had been established for her benefit in the amount of $275,218.78. (Defendant's Exhibit G.) The defendant attached these forms which clearly require that the existence of any trust funds be disclosed. (Defendant's Exhibit A, p. 7.) The defendant also attached the College Scholarship Service Financial Need Analysis Reports for the plaintiff for the 1996-97, 1997-98, 1998-99, and 1999-2000 academic years, each reflecting no disclosure of trust fund assets. (Defendant's Exhibit C.) The defendant argues that if the plaintiff had initially disclosed the existence of the trust fund, under federal guidelines for determining aid and loan eligibility, the plaintiff would not have been eligible to receive any financial aid or loans.[7]
The defendant attached an affidavit by Yale University's Associate Director of Student Financial Services, Julie Weber (Weber Affidavit), who averred that upon discovering the existence of the plaintiffs trust fund on October 13, 1999, she recalculated the plaintiffs financial aid CT Page 4916 eligibility under federal guidelines and determined that the plaintiff would not have been eligible for any financial aid had she disclosed the existence of the trust fund when she applied for financial aid each year.[8] (Weber Affidavit, ¶¶ 7-9.) Weber also averred that upon realizing the existence of the trust in question, she asked the plaintiff to return in full the aid and loans which she had been awarded. (Weber Affidavit, ¶ 9.) Weber went on to aver that the revocation of the plaintiffs financial aid package was not a punitive act: "The requirement that she repay the aid was based on the fact that her financial status rendered her ineligible to receive any need-based aid." (Weber Affidavit, ¶ 10.) Furthermore, the defendant argues that Weber recalculated the plaintiffs need "`on the same basis as all other Yale students who have trust funds with delayed maturity.'" (Defendant's Motion for Summary Judgment, p. 7, quoting Defendant's Exhibit H.) The defendant also submitted the plaintiffs deposition testimony, in which the plaintiff agreed with the defendant that the sum of $109,000[9] was the correct amount to be repaid, based on the sum of the aid and loans she was awarded. (Marrero Deposition, pp. 40-41.)
The plaintiff attached no evidence, affidavit or deposition testimony to substantiate her allegation that she was required to pay more than she owed.
"[S]tatutory theft under [General Statutes] § 52-564 is synonymous with larceny [as provided in] General Statutes § 53a-119. . . . Pursuant to § 53a-119, [a] person commits larceny when, with intent to deprive another of property or appropriate the same to himself or a third person, he wrongfully takes, obtains or [withholds] such property from [the] owner." (Brackets in original; internal quotation marks omitted.) Hi-Ho Tower, Inc. v. Com-Tronics, Inc., 255 Conn. 20, 44,761 A.2d 1268 (2000).
The defendant argues that it asked the plaintiff to repay the exact amount it was owed. It attached a final accounting and billing history which verifies that the sum in question was the exact amount the plaintiff owed the defendant. (Defendant's Exhibits J, K.) In addition, the plaintiff admitted in her deposition that there was no dispute regarding the sum in question. The plaintiff attached no evidence to substantiate her allegation that the defendant committed theft within the meaning of § 53a-119 when it required the plaintiff to repay the sum in question.
Accordingly, the plaintiff has not demonstrated that genuine issues of material fact exist with respect to whether the defendant committed theft when it required the plaintiff to repay the amount in question. Summary judgment is granted as to count one CT Page 4917
II. Whether The Defendant Engaged In An Unfair or Deceptive Business Practice In Violation of CUTPA
The defendant argues that the plaintiffs CUTPA claim derives, incorrectly, from the allegation that the defendant threatened to expel the plaintiff unless the plaintiff repaid the defendant the sum of $109,530.45 by February 16, 2000. The defendant argues that it never "threatened" the plaintiff with "expulsion" which would mean permanent exclusion from Yale. The defendant claims that the plaintiff was informed that her failure to repay the amount in question by the February 16, 2000 deadline would result in having to withdraw from the spring term with the opportunity to return and continue her studies once her account was settled. The defendant further claims that the February 16, 2000 deadline for settling the plaintiff s account applied to all graduating seniors who had not yet settled their accounts with Yale. The defendant argues that requiring all graduating students to settle their accounts by the deadline or withdraw for the term serves to protect Yale from students who would renege on their financial obligation to the school upon graduation. Furthermore, the defendant argues that because it is undisputed that the plaintiff was required to repay the defendant the amount the plaintiff owed the defendant, the plaintiff cannot show that she suffered an ascertainable loss of money or property in having to repay the loan, as required to make a CUTPA claim under General Statutes § 42-110g (a).
The defendant attached an affidavit in which Weber avers that upon discovering the plaintiff had a trust fund she recalculated the plaintiffs financial aid and loan package according to federal guidelines (for calculating loan and aid packages.) (Weber Affidavit, ¶ 9.) The defendant also submitted a copy of the plaintiffs account which shows that the amount the defendant asked the plaintiff to repay was the amount the plaintiff owed the defendant. (Defendant's Exhibits J, K.) Weber states that the plaintiff was not threatened with expulsion and the requirement that she repay the aid she had received was not punitive. (Weber Affidavit, ¶ 10-11.) The defendant attached correspondence to the plaintiffs attorney to this effect. (Defendant's Exhibit H.)
The plaintiff has not argued in opposition or attached any evidence to substantiate its allegation that the defendant's conduct amounted to a CUTPA violation.
General Statutes § 42-110b (a) provides: "No person shall engage in unfair methods of competition and unfair and deceptive acts or practices in the conduct of any trade or commerce." Connecticut courts have adopted "the criteria set out in the `cigarette rule' by the federal trade CT Page 4918 commission for determining when a practice is unfair: (1) [W]hether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise — in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers. . . ." (Internal quotation marks omitted.) HartfordElectric Supply Co. v. Allen-Bradley Co., 250 Conn. 334,368, 736 A.2d 824 (1999).
Contrary to what the plaintiff claims, the defendant's evidence demonstrates that it was requiring the plaintiff to repay the amount the plaintiff owed the defendant, and, that in doing so, it followed procedures used for all students who have outstanding balances with Yale prior to graduating. Furthermore, by following such procedures, evidence indicates that the defendant was protecting itself from students who might graduate without settling their accounts. There is no evidence to indicate the defendant's actions would "offend public policy," were "immoral, unethical, unscrupulous or oppressive," or that the defendant's actions caused the plaintiff "substantial injury." Id.
The plaintiff has not shown a genuine issue of material fact with respect to whether the defendant's actions constituted a CUTPA violation. Summary judgment is granted as to count two.
III. Whether The Defendant's Conduct Was Carried Out With The Intent To Cause The Plaintiff To Suffer Emotional Distress
The defendant argues that it informed the plaintiff that she must repay the financial aid she received as a result of failing to disclose her $386,000 trust fund, and that it denied the plaintiffs attorney s request to extend the deadline for settling the plaintiffs account. Apparently, these are the actions which would form the basis for the plaintiffs allegation that the defendant's conduct was carried out with the intent to cause the plaintiff severe emotional distress.
The defendant attached the plaintiffs deposition testimony, which states that the defendant's actions caused her to feel stress and anxiety and to talk to friends about the stress. (Marrero Deposition, pp. 9-11.) The defendant attached correspondence to the plaintiffs attorney which explains that the measures taken to assure that the plaintiff repay the sum in question were not punitive and that the plaintiff would be able to maintain her enrollment and graduate in the May if her account was settled by February 16, 2000. (Defendant's Exhibit H.) The defendant also attached affidavit testimony to the same effect. (Weber Affidavit, ¶ CT Page 4919 10.)
The plaintiff has not argued in opposition to the defendant's motion for summary judgment on this count, or attached any evidence which would substantiate her allegation that genuine issues of material fact exist with respect to whether the defendant's conduct was extreme and outrageous and carried out with the intent to cause the plaintiff to suffer severe emotional distress.
"For the plaintiff to prevail on a claim of intentional infliction of emotional distress, four elements must be established. It must be shown: (1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiffs distress; and (4) that the emotional distress sustained by the plaintiff was severe." (Internal quotation marks omitted.) Diamond v. Yale University,66 Conn. App. 764, 765-766, 786 A.2d 518 (2001), cert. denied,259 Conn. 906, ___ A.2d ___ (2002). "Liability for intentional infliction of emotional distress requires conduct exceeding all bounds usually tolerated by a decent society, of a nature which is especially calculated to cause, and does cause, mental distress of a very serious kind." (Internal quotation marks omitted.) Id, 765 n. 1.
Evidence indicates that in requiring the plaintiff to repay what she owed the defendant prior to graduating, the defendant acted as it would act with any graduating student whose account was not settled prior to graduating. The defendant's actions reflected the fact that it was requiring the plaintiff to repay funds which the plaintiff was never entitled to receive. Attached correspondence and affidavit testimony reveals no conduct "calculated" to cause "mental distress of a very serious kind," nor does it reveal conduct that was "extreme and outrageous." Id., 764-65. Furthermore, the plaintiff submitted no evidence to substantiate her allegation that the defendant acted with the intention of causing the plaintiff distress and indeed caused "mental distress of a very serious kind." Id. On the contrary, the defendant admits in her deposition that while she experienced anxiety and distress, and spoke to friends about it, the distress may have been the result of thinking about her father's death. (Marrero Deposition, pp. 8-11.) Whatever level of stress and anxiety the plaintiff experienced, and however it was caused, there is no evidence that it was "mental distress of a very serious kind." Id.
The plaintiff has not demonstrated that genuine issues of material fact exist with respect to whether the defendant intended to cause the plaintiff severe emotional distress. Summary judgment is granted as to CT Page 4920 count three.
Finally, in her memorandum in opposition to the defendant's motion for summary judgement, the plaintiff cites, in passing, federal case law for the proposition that "[s]ummary judgment generally may not be granted until after the plaintiff has had time to conduct necessary discovery on the issues addressed by the motion." (Plaintiffs Memorandum, p. 4.)
Practice Book § 17-44 provides, in part: "In any action, except administrative appeals which are not enumerated in Section 14-7, any party may move for summary judgment at any time, except that the party must obtain the judicial authority's permission to file a motion for summary judgment after the case has been assigned for trial." Practice Book § 17-47 provides: "Should it appear from the affidavits of a party opposing the motion for summary judgment that such party cannot, for reasons stated, present facts essential to justify opposition, the judicial authority may deny the motion for judgment or may order a continuance to permit affidavits to be obtained or discovery to be had or may make such order as is just."
The plaintiff attached no affidavit presenting facts to justify her claim that she did not have time to conduct discovery on issues addressed by the defendant's motion for summary judgment, as required by § 17-47. In addition, although the plaintiffs complaint was filed on September 7, 2000, she had, as of January 4, 2002, served no notice of discovery on the defendant, nor had she conducted a single deposition. The plaintiff has had ample opportunity to conduct necessary discovery or, by affidavit, provide the court with reasons for not having done so.
For the reasons herein stated, the plaintiff has not shown that genuine issues of material fact exist with respect to any of the three counts of the plaintiffs complaint. Summary judgment is granted with respect to all three counts.
 By the court, ___________________ Booth, J.