**Sharon P. RICKARD, Plaintiff,**

v.

**NATIONAL VISION, INC., and Wal–Mart Stores, Inc.[1], Defendants.**

**No. 3:05cv1886 (JBA).**

United States District Court,
D. Connecticut.

Sept. 28, 2007.

---

1. Defendant Wal–Mart Stores East, L.P. notes that it has been incorrectly named by the plaintiff as "Wal–Mart Stores, Inc." (Wal–Mart Resp. At 1 n. 1.)

John R. Williams, Katrena K. Engstrom, Williams & Pattis, New Haven, CT, for Plaintiff.

Richard Voigt, Robert J. Gallo, II, McCarter & English, Kristi E. Mackin, Beverly W. Garofalo, Thelen Reid Brown Raysman & Steiner LLP, Hartford, CT, Joel L. Finger, Thelen Reid Brown Raysman & Steiner LLP, New York, NY, for Defendants.

*RULING ON OBJECTIONS TO REC-*
*OMMENDED RULINGS ON DE-*
*FENDANTS' MOTIONS FOR SUM-*
*MARY JUDGMENT [DOCS. # 62,*
*63]*

JANET BOND ARTERTON, District
Judge

Plaintiff Sharon P. Rickard, a licensed
optician, originally sued defendants Na-
tional Vision, Inc. ("National Vision") and
Wal–Mart Stores, Inc. ("Wal–Mart") in
Connecticut state court. In her complaint,
Rickard asserted three claims against
Wal–Mart: intentional infliction of emo-
tional distress (Count One), tortious inter-
ference with plaintiff's contractual and
business relationship with National Vision
(Count Two), and defamation (Count
Three). Rickard also asserted three
claims against National Vision: negligent
infliction of emotional distress (Count
Four), intentional infliction of emotional
distress (Count Five), and wrongful termi-
nation against public policy (Count Six).
Defendants removed the action to federal
court in December 2005, and now move for
summary judgment.

Magistrate Judge Joan Glazer Margolis,
to whom these motions were referred
[Doc. # 40], issued her Recommended Rul-
ings [Docs. # 60, 61] on July 30, 2007,
granting defendants' Motions for Sum-
mary Judgment [Docs. # 62, 63]. Plain-
tiff's Objections [Docs. # 62, 63] were sub-
mitted thereafter. For the reasons below,
the Court OVERRULES the objections to
the Recommended Rulings, ADOPTS the
Recommended Rulings, and GRANTS
summary judgment to defendants.

## I. Factual and Procedural Background

The Court presumes familiarity with the
Magistrate Judge's Recommended Rul-
ings, in which the factual background is
described at length. The following sum-
marizes the relevant facts.

The plaintiff began working for National
Vision in 2002 at its location within the
Wal–Mart store in Shelton, Connecticut.
National Vision operated a vision center
inside this Wal–Mart store pursuant to a
leasing and profit-sharing arrangement,
but Rickard was employed by National
Vision, though she was required to comply
with Wal–Mart's basic security protocols.
On September 15, 2005, Jim Herron, who
was National Vision's district manager and
plaintiff's supervisor, called her at home to
ask her to come to the store. Upon arriv-
ing, plaintiff met with Cynthia Maida, a
Wal–Mart security representative. With
Herron present, Maida told plaintiff that
someone had accused her of improperly
taking Wal–Mart merchandise and that
there was video evidence to corroborate
this. After some encouragement and con-
templation, Rickard admitted that she
could not provide documentation showing
that she had paid for the merchandise, and
so she elected to pay for the goods at that
time. Rickard also signed three docu-
ments during this meeting: a written ac-
knowledgment that she had removed Wal–
Mart merchandise, a restitution note for
the value of the goods, and a notification
that she was restricted from entering Wal–
Mart property. At the conclusion of this
meeting, Rickard retrieved her degrees
and license and left the premises. Believ-
ing that her employment with National
Vision had ceased, she never returned to
the Shelton store.[2]

Defendants moved for summary judg-
ment. Upon referral of the motions, Mag-
istrate Judge Margolis concluded that
summary judgment should be granted on

---

**2.** For further elaboration on the relevant
facts, including citations to the record, see
Wal–Mart Rec. Ruling [Doc. # 60] at 3–12,
Nat'l Vision Rec. Ruling [Doc. # 61] at 2–7.

all counts. For the reasons that follow, plaintiff's objections will be overruled and summary judgment granted to the defendants.

## II. Discussion

### A. Standard

This Court, pursuant to Local Rule 72.2(b) and Federal Rule of Civil Procedure 72(b), reviews *de novo* the portions of the Magistrate Judge's decision objected to by the plaintiff and may adopt, reject, or modify any part or the entirety of the recommended ruling. *See* 28 U.S.C. § 636(b)(1).

### B. Ruling as to Wal–Mart

Rickard objects to the recommended disposition as to Wal–Mart in several respects. Plaintiff contends that Judge Margolis "made credibility determinations [by] improperly credit[ing] the statements of the Wal–Mart investigators"; "credited hearsay statements by a National Vision employee"; "mischaracterized plaintiff's statements on [whether she] had paid cash for items or used a credit card"; and failed to "address plaintiff's claim that Wal–Mart's investigator told her that they had a video of her activities, and that they could take her license if she did not cooperate." (Pl.'s Objections re: Wal–Mart at 1–5.)

Wal–Mart's response correctly notes that Rickard's objection relates only to her intentional infliction of emotional distress claim, but not the tortious interference and defamation claims.[3] Therefore, after review and absent objection, the Recommended Ruling is adopted with respect to Counts Two and Three.

As to the remaining Count One, Judge Margolis concluded that summary judge-ment was appropriate because the evidence failed to show that conduct of Wal–Mart employees could be found to constitute extreme and outrageous conduct, a necessary element of a claim for intentional infliction of emotional distress. *See Petyan v. Ellis,* 200 Conn. 243, 253, 510 A.2d 1337 (1986). After extended summary of the events of September 15, 2005, with particular attention to what Maida said and did in the context of questioning Rickard about the missing merchandise, Judge Margolis concluded:

> Courts in Connecticut and federal district courts within the Second Circuit have been reluctant to find an employer's conduct in situations similar to this case sufficiently outrageous and extreme so as to support a claim for intentional infliction of emotional distress. *See, e.g., Etienne v. Wal–Mart Stores, Inc.,* 186 F.Supp.2d 129, 136–38 (D.Conn.2001) (employer's conduct, including interviewing, suspending and demoting an employee after he was implicated in thefts from the store, does not constitute extreme and outrageous behavior); *Sabatowski v. Fisher Price Toys,* 763 F.Supp. 705, 716–17 (W.D.N.Y.1991) (employee's allegations that she was forced and coerced by employer into admitting to a crime which she did not commit and hearing that she was to be made a scapegoat for missing merchandise and made an example of, is not so extreme and outrageous to maintain a claim for intentional infliction of emotional distress under comparable New York law); *Emanuele v. Boccaccio & Susanin,* No. CV90–0379667S, 1994 WL 702923, at *2–3, 1994 Conn.Super. LEXIS 3156, at *6–8 (Conn.Super.Ct. Dec.1, 1994) (allegations by an employee that her employer made false accusations regarding her

---

**3.** Additionally, with respect to the defamation claim in Count Three, Magistrate Judge Mar-golis concluded plaintiff had abandoned it. (Wal–Mart Rec. Ruling at 27.)

work performance and used coercion, threats and intimidation to force her to sign a document against her will, all for depriving her of benefits and compensation, do not constitute extreme and outrageous behavior that will maintain a claim for intentional infliction of emotional distress).

Applying the "appropriate stringent standards in light of such precedents," *Etienne*, 186 F.Supp.2d at 138, this Court concludes that defendant's conduct does not "go beyond all possible bounds of decency, ... [is not] regarded as atrocious, and [is not conduct that is] utterly intolerable in a civilized community." *Appleton*, 254 Conn. at 211, 757 A.2d 1059 (quotations & citation omitted). Because this Court concludes that defendant Wal–Mart's conduct was not "extreme and outrageous," the other three elements of this claim will not be addressed.

(Wal–Mart Rec. Ruling at 22–23 (footnotes omitted).)

■ Rickard argues in her Objection that this conclusion misconstrues the evidence pertaining to the security video, the influence of a disgruntled employee, and the possibility that Rickard paid for the goods in question with cash. None of these grounds disturbs the ultimate conclusion that there was insufficient evidence of extreme or outrageous conduct by Wal–Mart. First, even if, as plaintiff contends, the video contained no footage of her actually doing anything improper, that would not make Maida's conduct actionable; her alluding to inconclusive video evidence of possible theft during a private interview, even if accompanied by reference to Rickard possibly losing her optician license, does not "go beyond all possible bounds of decency." *See Appleton v. Bd. of Educ.*, 254 Conn. 205, 211, 757 A.2d 1059 (2000).

Second, there is no evidence that the employee discussed by plaintiff was in fact disgruntled; even if he was, there is nothing in the record to support plaintiff's contention that Maida had knowledge of this during the meeting, nor that it played a part in a course or pattern of outrageous conduct. Third, whether Rickard may have in fact paid cash for the goods permits no inference that Maida's conduct on behalf of Wal–Mart was outrageous. In fact, in light of the legal standards articulated in the Recommended Ruling and the circumstances surrounding the questioning, even evidence showing that Maida was completely mistaken in suspecting Rickard of committing theft would not change the legal import of her conduct.

Therefore, because no reasonable jury could conclude that Wal–Mart's representatives engaged in extreme and outrageous conduct, Judge Margolis correctly concluded that summary judgment is appropriate on Count One.

### C. Ruling as to National Vision

Rickard also objects to the recommended disposition as to National Vision on several grounds. Plaintiff complains that "the Magistrate made credibility determinations, in which she credited the statements of two Wal–Mart investigators"; "did not credit her testimony that if she paid cash for the items, she would have no bank record"; neglected that Herron "passively condoned and adopted the conduct of the Wal–Mart investigator"; overlooked "reports of improprieties by James Valinsky, a local manager who plaintiff had reported to headquarters during the summer of 2005"; credited the testimony of "a disgruntled National Vision employee"; and failed to consider Maida's "threat to take her license under

the pretense of 'video' evidence." [4] (Pl.'s Objections re: National Vision at 1–7.)

### 1. Negligent infliction of emotional distress

▮▮▮ As the Recommended Ruling explains, prevailing on a negligent infliction claim in the employment context requires proof that "the conduct of the defendant must be unreasonable so as to 'transgress the bounds of socially tolerable behavior.' " (Nat'l Vision Ruling at 9 (*quoting Parsons v. United Techs. Corp.*, 243 Conn. 66, 89, 700 A.2d 655 (1997)).) The defendant must "have realized that its conduct involved an unreasonable risk of causing the distress [and that such] distress, if it were caused, might result in illness or bodily harm." *Montinieri v. So. New England Tel. Co.*, 175 Conn. 337, 341, 398 A.2d 1180 (1978). Applying these principles, Judge Margolis concluded:

> National Vision did not engage in any behavior that involved an "unreasonable risk" to plaintiff. The only action that Herron took on September 15, 2005 was to call plaintiff at home and ask her to come to work. As plaintiff testified repeatedly at her deposition, Herron did not speak up during the September 15, 2005 meeting when Wal–Mart's representative was accusing his store manager of theft of Wal–Mart's merchandise. His silence was reasonable given that plaintiff was unable to produce any receipts or bank records for the goods in question, and given that plaintiff voluntarily signed her admission Statement, Restitution Note, and Notification of Restriction from Property. Furthermore, despite plaintiff s contention that Herron had a duty to give "notice of the problem to plaintiff," there is no evidence that Herron had prior knowledge of the allegations against plaintiff, nor does plaintiff offer legal support that such a duty exists. Accordingly, Herron's silence at the meeting does not constitute conduct that would involve an unreasonable risk of causing emotional distress or conduct that would "transgress the bounds of socially tolerable behavior."

(Nat'l Vision Rec. Ruling at 11–12(citations and footnotes omitted).) The Court agrees with this assessment, and nothing cited in plaintiff's objections alters the analysis, particularly given that little if any of the conduct was made on behalf of National Vision. According to Rickard, "[Herron's] failure to speak up or raise any questions about the allegations of theft forms the basis of the negligent claim." (Pl.'s Objection re: National Vision at 2.) Certainly this conduct, standing alone, does not show evidence of conduct by National Vision's agents creating an unreasonable risk of harm to Rickard. Furthermore, even assuming Herron's passiveness in the face of Wal–Mart employees' accusations, about which no evidence shows he had any knowledge, such conduct is nevertheless insufficient evidence of conduct attributable to National Vision to constitute socially intolerable behavior. Therefore, summary judgment is granted as to Count Four.

### 2. Intentional infliction of emotional distress

▮ Plaintiff's intentional infliction claim against National Vision is evaluated under the same standards described above. On largely the same facts, Judge Margolis concluded:

---

**4.** While plaintiff disputes the grounds for recommended disposition of her negligent and intentional infliction of emotional distress claims, she makes no objections to the disposition of her wrongful termination claim. Thus, the Recommended Ruling is adopted with respect to Count Six.

In this case, plaintiff alleges in her Complaint that Herron assisted Wal–Mart security representative Cynthia Maida in intimidating and frightening plaintiff. However, at her deposition, plaintiff repeatedly testified that Herron was silent throughout this meeting. As stated above, his silence was reasonable given that plaintiff was unable to produce any receipts or bank records for the goods in question, and voluntarily signed her Statement, Restitution Note, and Notification of Restriction from Property. In light of the foregoing and viewing the facts in the light most favorable to plaintiff, assuming that the meeting was conducted in precisely the manner in which plaintiff claims, Herron's silence falls far short of conduct which "go[es] beyond all possible bounds of decency, [is] regarded as atrocious, and [is] utterly intolerable in a civilized society."

(Nat'l Vision Rec. Ruling at 13–14(citations and footnote omitted).) Plaintiff's objections here suffer from the same flaws as discussed above with respect to Count One. In short, accepting Rickard's version of the facts and assuming her to be innocent of the theft accusations, no reasonable fact-finder could conclude that the conduct on behalf of National Vision was sufficiently extreme and outrageous to be actionable. Therefore, summary judgment is appropriate on Count Five.

### III. Conclusion

Accordingly, the Plaintiff's Objections are OVERRULED and the Recommended Rulings [Docs. # 60, 61] granting defendants' Motions for Summary Judgment are APPROVED and ADOPTED in full.

The Clerk is directed to close this case.

IT IS SO ORDERED.