[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: MOTION FOR SUMMARY JUDGMENT
The intervening plaintiff, J.P. Salmini Company, Inc., has moved for summary judgment on the counterclaim that has been filed against it by the defendant, BD Molded Products, Inc. The intervening plaintiff contends that the counterclaim is baned by the exclusivity clause of the Workers' Compensation Act. For the reasons stated below, the motion for summary judgment is denied.
The intervening plaintiff, J.P. Salmini Company, Inc., is the employer of plaintiff Courtney Marsh, who was injured while servicing a furnace that was located on the premises of defendant, BD Molded Products, Inc. After Marsh brought suit against BD, Marsh's employer intervened as a co-plaintiff in order to obtain reimbursement for the sums it had paid Marsh under the Workers' Compensation Act. Defendant BD thereupon filed a counterclaim against J.P. Salmini Company, Inc. seeking indemnification for damages that BD may be required to pay Marsh.
The intervening plaintiff, J.P. Salmini Company, Inc., has now moved for summary judgment on the two counts of the counterclaim, arguing that the claims for indemnification fail. As to the first count, Salmini contends that (1) the facts show without question that there is no independent legal relationship between itself and BD, and (2) BD has not sufficiently plead the existence of an independent legal duty. With respect to the second count, Salmini contends that the facts show that it did not contract with BD or agree by words, actions or conduct to perform work for BD in a good and workmanlike manner.
Summary judgment "is appropriate only if a fair and reasonable person CT Page 16083 could conclude only one way." Miller v. United Technologies Corp.,233 Conn. 732, 751, 660 A.2d 810 (1995). "[A] summary disposition . . . should be on evidence which a jury would not be at liberty to disbelieve and which would require a directed verdict for the moving party." (Internal quotation marks omitted.) Id., 752. "[A] directed verdict may be rendered only where, on the evidence viewed in the light mostfavorable to the nonmovant, the trier of fact could not reasonably reach any other conclusion than that embodied in the verdict as directed." (Emphasis in original.) Id.
"In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . ." (Internal quotation marks omitted.) Appleton v. Board of Education,254 Conn. 205, 209, 757 A.2d 1059 (2000). "The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to judgment as a matter of law." (Internal quotation marks omitted.) Id. "[T]he party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact." (Internal quotation marks omitted.) Id. "In ruling on a motion for sununary judgment, the court's function is not to decide issues of material fact, but rather to determine whether any such issues exist." Nolan v. Borkowski, 206 Conn. 495, 500, 538 A.2d 1031 (1988).
"When the third party, in a suit by the employee, seeks recovery over against a contributorily negligent employer, contribution [or indemnification] is ordinarily denied on the ground that the employer cannot be said to be jointly liable in tort to the employee because of the operation of the exclusive-remedy clause. But if the employer can be said to have breached an independent duty toward the third party, or if there is a basis for finding an implied promise of indemnity, recovery in the form of indemnity may be allowed. The right to indemnity is clear when the obligation springs from a separate contractual relation, such as an employer-tenant's express agreement to hold the third-party landlord harmless, or a bailee's obligation to indemnify a bailor, or a contractor's obligation to perform his work with due care; but when the indemnity claim rests upon the theory that a `primary' wrongdoer impliedly promises to indemnify a `secondary' wrongdoer, the great majority of the jurisdictions disallow this claim." (Internal quotation marks omitted.) Ferryman v. Groton, 212 Conn. 138, 144-45, 561 A.2d 432
(1989). "In view of the exclusivity of workers' compensation relief, indemnity claims against employers as joint tortfeasors warrant the special additional limitation of an independent legal relationship."Skuzinski v. Bouchard Fuels, Inc., 240 Conn. 694, 699, 694 A.2d 788
(1997). CT Page 16084
BD alleges in the first count of the counterclaim that an independent legal relationship existed between BD and Salmini "[b]ased upon the numerous service calls, the purchase orders and payments made for said calls, and the defendant's reliance upon the intervening plaintiff to properly service the furnace to the exclusion of all others." In the second count, BD alleges that "[o]n those dates when the intervening plaintiff serviced the subject furnace, it agreed to perform the work in a good and workmanlike manner."
In support of its motion for summary judgment, Salmini has submitted the affidavit of its vice president, Gregory M. Salmini, Jr. He asserts the following: Marsh's injuries arose within the course of his employment and that Salmini paid workers' compensation benefits to Marsh; on and before October 23, 1997, Salmini did not have a written service contract with BD; on or before October 23, 1997, BD would periodically call Salmini requesting service on its furnace and Salmini would respond to that call; Salmini never agreed orally or in writing to indemnify BD; Salmini never agreed orally or in writing to perform work at BD "in a good and workmanlike manner;" and Salmini never agreed to perform work at BD "with due care."
In opposing the motion, BD has submitted the affidavit of Thomas Outlaw, III, the president of BD. Outlaw avers that Salmini serviced the subject furnace during the period from November, 1987, through March, 1997, approximately thirty-one times; that BD would contact Salmini for service with respect to the subject furnace whenever service was required; that BD used Salmini exclusively to service the subject furnace during the period from 1987 through 1997 up to and including the date that the plaintiff was injured on October 23, 1997; that BD in hiring and paying Salmini to service the furnace relied upon Salmini to perform its service in a good and workmanlike manner and with due care so that the subject furnace would function safely and properly, and provide the necessary heat for BD.
With respect to count one, Salmini first argues that no independent relationship exists as a matter of law. BD claims that Salmini was the exclusive servicer of the furnace on the date of the plaintiff's injuries and during the prior ten years. While Salmini denies that an express written contract existed, it concedes that Salmini had been servicing the furnace and was servicing furnace on the occasion when the plaintiff was injured. There is no denial, therefore, of a contractual relationship between the parties. The contractual relationship was independent of the tort encounter between the plaintiff and the defendant. In other words, BD's counterclaim is on account of an alleged breach of the duties arising out of its contractual relationship with Salmini, not merely on account of the injuries sustained by the plaintiff. In this sense, the CT Page 16085 contractual relationship between BD and Salmini is independent of the tortious relationship between the plaintiff and BD. There existed an independent legal relationship that was contractual in nature.
The analysis does not end here. In order to be able to overcome the exclusivity bar of the Workers' Compensation Act, there must also be an independent legal duty owed by Salmini to BD. Such a duty exists in the present case. "The existence of a duty of care, an essential element of negligence, is a matter of law for the court to decide. . . . A duty to act with reasonable care to prevent harm to a plaintiff which, if violated, may give rise to tort liability is based on a `special relationship' between the plaintiff and defendant. . . . A duty to use due care may arise from a contract, from a statute, or from circumstances under which a reasonable person, knowing what he knew or should have known, would anticipate that harm of the general nature of that suffered was likely to result from his act or failure to act." (Citations omitted; internal quotation marks omitted.) Burns v. Board of Education,228 Conn. 640, 646, 638 A.2d 1 (1994). Section 404 of the Restatement of Torts (Second) states "[o]ne who as an independent contractor negligently makes, rebuilds, or repairs a chattel for another is subject to the same liability as that imposed upon negligent manufacturers of chattels." 2 Restatement (Second) Torts, Negligence in Making, Rebuilding, or Repairing Chattel § 404, p. 364 (1965). Comment (b) to § 404 states "[i]n order that a contractor may be subject to liability under the rule stated in this Section it is not necessary that his negligence have changed the condition of the chattel for the worse. It is enough that the chattel because of his negligence is not in that safe condition in which a competent contractor would have put it and that it is used, or permitted to be used, in reliance upon the care and competent of the contractor." 2 Restatement (Second), Torts § 404, comment (b) (1965). Comment (a) to Section 404 makes reference to Section 395: "[t]he rule stated in this Section requires an independent contractor who makes, rebuilds, or repairs a chattel for an employer to do everything which he undertakes with the same competence and skill which is required of a manufacturer in doing those things which are necessary to the turning out of a safe product, under the rules stated in §§ 395-398." 2 Restatement (Second), Torts § 404, comment (a) (1965). Accordingly, § 395 must be analyzed to determine the duty owed by a contractor who contracts to repair or service a chattel.
Section 395 of the Restatement of Torts (Second) states "[a] manufacturer who fails to exercise reasonable care in the manufacture of a chattel, which, unless carefully made, he should recognize as involving an unreasonable risk of causing physical harm to those who use it for a purpose for which the manufacturer should expect it to be used and to those whom he should expect to be endangered by its probable use, is CT Page 16086 subject to liability for physical harm caused to them by its lawful use in a manner and for a purpose for which it is supplied." 2 Restatement (Second), Torts, Negligent Manufacture of Chattel Dangerous Unless Carefully Made § 395, p. 325 (1965). Comment (b) to § 395 states "[t]he justification for [this section] rests upon the responsibility assumed by the manufacturer toward the consuming public, which arises, not out of contract, but out of the relation resulting from the purchase of the product by the consumer; upon the foreseeability of harm if proper care is not used; upon the representation of safety implied in the act of putting the product on the market; and upon the economic benefit derived by the manufacturer from the sale and subsequent use of the chattel." 2 Restatement (Second), Torts § 395, comment (b) (1965).
Salmini had a duty to perform its work for BD with due care. It is of no consequence that Salmini did not agree to perform the work with due care as this duty is imposed by law. "The existence of a duty is a question of law and only if such a duty is found to exist does the trier of fact then determine whether the defendant violated that duty in the particular situation at hand." (Internal quotation marks omitted.)Maffucci v. Royal Park Ltd. Partnership, 243 Conn. 552, 566, 707 A.2d 15
(1998). Here, it was foreseeable that if the service to the furnace was not performed with due care, injuries of the type suffered by the plaintiff could occur. Therefore, an independent legal duty to perform repairs and maintenance with due care arose between the parties as a result of the parties contractual relationship, which constitutes an independent legal relationship sufficient to take this case outside of the exclusivity bar of the Workers' Compensation Act.
Salmini also argues that the first count is legally insufficient because it fails to properly allege an independent legal duty owed by Salmini to BD. On July 26, 2000, Salmini filed a motion to strike both counts of BD's counterclaim on the ground that BD failed to state a legally sufficient cause of action for indemnification. In a memorandum of decision dated March 28, 2001, the Court, Melville, J., denied Salmini's motion to strike, holding that the "defendant properly alleged the necessary elements of an indemnification claim to avoid the exclusivity provision of the Workers' Compensation Act." BD has alleged the following: that an independent legal relationship existed between the parties; that the plaintiff's injuries were proximately caused by the negligence of the intervening plaintiff and any negligence on the part of the BD was passive in nature; that BD had no reason to anticipate Salmini's negligence and could reasonably rely on Salmini not to be negligent; and that Salmini was in control of service of the furnace to the exclusion of all others. It is clear that BD has alleged the necessary elements for common law indemnification in the workers' compensation context under the rule of Skuzinski v. BouchardCT Page 16087Fuels, Inc., supra, 240 Conn. 694.
Salmini argues that "[t]he second count of BD's counterclaim alleging that Salmini failed to perform its service in a good and workmanlike manner fails to establish an independent duty owed by Salmini to BD as a matter of law." As stated above, however, the Court,Melville, J., has already decided that BD has pleaded sufficient facts in the second count to avoid the exclusivity bar of the Workers' Compensation Act. "The law of the case is not written in stone but is a flexible principle of many facets adaptable to the exigencies of the different situations in which it may be invoked. . . . [I]t expresses the practice of judges generally to refuse to reopen what has been decided and is not a limitation on their power. . . . Where a matter has previously been ruled upon interlocutorily, the court in a subsequent proceeding in the case may treat that decision as the law of the case, if it is of the opinion that the issue was correctly decided, in the absence of some new or overriding circumstance." (Emphasis in the original; internal quotation marks omitted.) Miller v. Kirshner, 225 Conn. 185, 191,621 A.2d 1326 (1993). There is no new or overriding circumstance that indicates the previous ruling should not be treated as the law of the case.
The motion for summary judgment is denied.
THIM, J.