LEO BOMBALICKI *v.* NICHOLAS PASTORE ET AL.
(AC 21719)

Lavery, C. J., and Schaller and West, Js.

Argued May 6—officially released August 27, 2002

*John R. Williams,* for the appellant (plaintiff).

*Thomas W. Ude, Jr.,* corporation counsel, for the appellees (defendants).

*Opinion*

SCHALLER, J. The plaintiff, Leo Bombalicki, appeals from the judgment of the trial court denying his request for injunctive relief as to the first count of his complaint and directing a verdict on the second count in favor of the defendants, Nicholas Pastore, the former chief of the police department of the city of New Haven, the city of New Haven (city) and the board of police commissioners of the city of New Haven (board). On appeal, the plaintiff claims that the court improperly (1) granted the defendants' motion for a directed verdict and (2)

denied injunctive relief. We affirm the judgment of the trial court.

The following facts are necessary for our resolution of the plaintiff's appeal. The plaintiff enrolled in the New Haven police department in 1978 and was promoted to the rank of sergeant in 1991. In 1993, the plaintiff took the civil service examination for promotion to lieutenant and was given a rank of nine on the list of the results of the examination.[1] On September 27, 1994, the board promoted nineteen of the top twenty-five candidates on the basis of Pastore's recommendation. The plaintiff was not among the nineteen promoted.[2]

Thereafter, the plaintiff brought an action against the defendants to contest their failure to promote him. The amended complaint contained two counts. The first count alleged that the defendants' failure to promote him violated the New Haven charter provision that governed the promotion system. The second count alleged intentional infliction of emotional distress. The allegation as to the charter violation was tried to the court, and the allegation of intentional infliction of emotional distress simultaneously was tried to the jury.

At the close of the plaintiff's case, the court granted the defendants' motion for a directed verdict on the second count. The court then heard argument on the first count and concluded that the September, 1994 promotion list violated the city's charter. The court, however, did not award the plaintiff injunctive relief. The court ruled that because the plaintiff in October, 2000, had been promoted to lieutenant, there no longer was any meaningful declaratory or injunctive relief that

---

[1] Although the city's ranking and promotion system was relevant to the determination of the plaintiff's allegation that the defendants violated the charter by failing to promote him, we need not address the plaintiff's rank or the promotion system further because of our resolution of the plaintiff's second claim.

[2] The plaintiff subsequently was promoted to lieutenant in October, 2000.

the court could award him. The court therefore rendered judgment for the defendants, and this appeal followed. Additional facts will be set forth as necessary.

## I

The plaintiff first claims that the trial court improperly granted the defendants' motion for a directed verdict on the second count, which alleged intentional infliction of emotional distress. Specifically, the plaintiff argues that the jury could have concluded that Pastore's failure to recommend the plaintiff for promotion was "extreme and outrageous" conduct, as defined by the law regarding intentional infliction of emotional distress.

The following additional facts are necessary for our resolution of the plaintiff's claim. After the plaintiff took the civil service examination and was assigned a rank of nine, the New Haven Register newspaper reported that Pastore planned on promoting nineteen officers and that the plaintiff was one of a number of officers who were on the list of those to be promoted. Subsequent to that report, however, Pastore passed over the plaintiff and failed to recommend him for promotion. Testimony during the trial revealed that the plaintiff and Pastore did not like one another. The source of strife between the parties was the plaintiff's criticism of Pastore's leadership of the police department. One police officer testified that Pastore had stated, " '[T]hat kid will never be a lieutenant as long as I'm chief.' " The plaintiff maintained that because Pastore did not like him, Pastore had blacklisted him and passed him over for promotion despite his qualifications.

At the close of the plaintiff's case, the defendants requested a directed verdict in their favor. In ruling on the motion, the court stated that the "law that is controlling requires that there be an extraordinary degree of humiliation and degradation before the tort

. . . kicks in. And I do not believe that the evidence in this case, looked at in the light most favorable to the plaintiff, meets this threshold. Looking at . . . the evidence in this case in the light most favorable to the plaintiff, the jury could arguably, and I emphasize arguably, infer that [the plaintiff] was denied promotion in part because of criticisms he had made. . . . But even if the jury could make that inference, the failure to promote here was simply a failure to promote. There is testimony . . . that the chief said . . . 'that kid will never be a lieutenant as long as I'm chief.' But it is unaccompanied by—that statement by itself was unaccompanied by any derogatory language or any allegation of malfeasance or anything like that. . . . With respect to . . . Pastore . . . I take it [the plaintiff's counsel's] argument, of which I appreciated its force, is that assuming hypothetically that there was the forbidden motivation, that that motivation coupled perhaps with the remarks . . . that are in the evidence was sufficiently outrageous to pass the test. And reading the cases as carefully as I can, I do not see, using my best judgment, that that does pass the test." The court therefore granted the defendants' motion for a directed verdict.

At the outset, we note our standard of review. "The standard of review of directed verdicts is well settled. A directed verdict is justified if on the evidence the jury could not reasonably and legally have reached any other conclusion. . . . In reviewing the trial court's action in directing a verdict for [the defendants], we must consider the evidence in the light most favorable to the plaintiff." (Citations omitted; internal quotation marks omitted.) *Zanoni* v. *Hudon*, 48 Conn. App. 32, 36, 708 A.2d 222, cert. denied, 244 Conn. 928, 711 A.2d 730 (1998).

We also note the law relevant to an allegation of intentional infliction of emotional distress. "In order

for the plaintiff to prevail in a case for liability under . . . [intentional infliction of emotional distress], four elements must be established. It must be shown: (1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe. . . . Whether a defendant's conduct is sufficient to satisfy the requirement that it be extreme and outrageous is initially a question for the court to determine. . . . Only where reasonable minds disagree does it become an issue for the jury. . . .

"Liability for intentional infliction of emotional distress requires conduct that exceeds all bounds usually tolerated by decent society . . . . Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, Outrageous! . . . Conduct on the part of the defendant that is merely insulting or displays bad manners or results in hurt feelings is insufficient to form the basis for an action based upon intentional infliction of emotional distress." (Citations omitted; internal quotation marks omitted.) *Appleton v. Board of Education*, 254 Conn. 205, 210–11, 757 A.2d 1059 (2000).

Viewing the evidence in the light most favorable to the plaintiff, we conclude that Pastore's conduct did not constitute extreme and outrageous conduct. In so doing, we first summarize the relevant evidence adduced at trial and define Pastore's conduct. First, it

was clear that the plaintiff and Pastore did not like each other. Pastore had discussed his relationship with the plaintiff on occasion with fellow officers. The fact that the plaintiff and Pastore were at odds was known to some degree generally in the police department. The plaintiff had received a rank on the civil service examination that made him eligible for a promotion. The New Haven Register reported that Pastore had planned to recommend nineteen officers for promotion. The article also stated, in essence, that if Pastore followed the test results, which he had done in the past, the plaintiff was among those on the list of officers to be promoted. Pastore ultimately did not recommend the plaintiff for promotion. Furthermore, it is obvious that the discordant relationship played into Pastore's decision to pass over the plaintiff and not recommend him for promotion. When taken in sum, the evidence indicates that Pastore's conduct with respect to the plaintiff included expressing his dislike of the plaintiff, talking about the plaintiff unfavorably to other officers, opposition to the plaintiff's promotion and an ultimate decision not to recommend the plaintiff for promotion.

Viewing that evidence in a light in most favorable to the plaintiff, we cannot conclude that Pastore's conduct was extreme and outrageous. Although the evidence revealed that Pastore did not hold the plaintiff in high regard, spoke ill of him and did not want to promote him, such conduct in this case does not go "beyond all possible bounds of decency," cannot be regarded as "atrocious," and is not "utterly intolerable in a civilized community." (Internal quotation marks omitted.) Id., 211. Although the conduct was insulting and likely to result in hurt feelings, such conduct is insufficient to form the basis for an action in intentional infliction of emotional distress. As the court correctly stated, "[t]he failure to promote here was simply a failure to promote." Moreover, as a practical matter, the plaintiff's

own conduct contributed to the hostile relationship with Pastore because he was outspoken in his criticism of Pastore's leadership of the police department. In that context, Pastore's conduct, namely, his statements regarding the plaintiff and his failure to recommend the plaintiff for promotion, was hardly extreme and outrageous.

Additionally, the plaintiff argues that it was distressing for him to anticipate promotion on the basis of the newspaper report and then learn that he was not going to receive a promotion. The contents of the New Haven Register article, however, cannot be construed to be conduct by Pastore. The newspaper article did not include a quotation or confirmation from Pastore that the plaintiff was to receive a promotion. In fact, the article indicated that efforts to reach Pastore for comment were unsuccessful.

Because we conclude that the evidence, when viewed in the light most favorable to the plaintiff, established that the jury could not reasonably and legally have reached any other conclusion except that he had failed to prove extreme and outrageous conduct, we conclude that the court properly granted the defendants' motion for a directed verdict as to the second count of the complaint.

## II

The plaintiff also claims that the court improperly denied him injunctive relief.

The following additional facts are necessary for our resolution of the plaintiff's claim. After concluding that the defendants had violated the city charter by not promoting the plaintiff, the court did not order injunctive relief because the plaintiff in October, 2000, had been promoted to lieutenant. The court stated that "[i]n the case of an employee unfairly considered for a pro-

motion, a judicial order of retroactive promotion would award *more* than the employee was entitled to before the wrong was committed." (Emphasis in original.) The court further stated that the only remedy to which the plaintiff was entitled for the defect in the promotion process was an order for reconsideration after the defect has been corrected. The court concluded, however, that it could not offer the plaintiff any meaningful declaratory or injunctive relief because a prospective order to be fairly considered for the promotion would be meaningless in view of the fact that he already had been promoted.

We decline to review the plaintiff's claim that the failure to award any relief was improper because the plaintiff has failed to brief the issue adequately. The plaintiff's principal brief concerning his claim includes two paragraphs that contain no standard of review, no applicable law or authority and no analysis of the claim.

The plaintiff's brief merely asserts, in essence, that the court "suffered from an uncharacteristic failure of imagination" in ruling as it did. We fail to discern the legal argument in that statement. Additionally, although the brief states that equitable relief was available, it fails to provide any analysis or to request any specific relief. Instead, the plaintiff offers one example of what the court could have done and then concludes that other possible remedies could have been devised "with a modicum of thought." Moreover, although the plaintiff states that the court "erroneously thought that no remedies were available" and therefore did not exercise its discretion, it is evident from the memorandum of decision that the court considered the equitable remedies and concluded that equity did not require further action.

As we have stated previously, "[w]e are not required to review issues that have been improperly presented to this court through an inadequate brief. . . . Analy-

sis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly. . . . We will not review claims absent law and analysis." (Internal quotation marks omitted.) *Legnos* v. *Legnos,* 70 Conn. App. 349, 355, 797 A.2d 1184, cert. denied, 261 Conn. 911, 806 A.2d 48 (2002).

The judgment is affirmed.

In this opinion the other judges concurred.