[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE (#104) DEFENDANT'S MOTION TO STRIKE
On March 25, 2002, the plaintiff, Alice McIntyre, filed a five-count complaint against the defendant, Fairfield University. The plaintiff alleges a violation of General Statutes § 31-51q (count one); breach of contract (count two); negligent misrepresentation (count three); intentional infliction of emotional distress (count four); and negligent infliction of emotional distress (count five).
On July 10, 2002, the defendant filed a motion to strike counts one and four[1] of the complaint and a memorandum of law in support of the motion.
The plaintiff filed a memorandum in opposition on September 17, 2002, and the defendant filed a reply on September 25, 2002.
The plaintiff alleges the following facts. In 1996, the plaintiff was hired as a full-time assistant professor by the defendant in the graduate school of education and allied professions (GSEAP), and appointed director of the graduate program in elementary education.
As the director, it was the plaintiff's job to place student teachers in various schools for their teaching assignments. Most of the students were placed in urban schools. In the classroom and in her published works, the plaintiff focused on race, racism and "whiteness." The dean of GSEAP asked the plaintiff to place fewer students in urban schools and reduce the emphasis on discussing race, racism and "whiteness" in the classroom. Despite this request, the plaintiff did not make any changes.
In October 2000, the plaintiff applied for a tenured position and a promotion to associate professor. Despite meeting the defendant's requirements, the plaintiff was denied tenure and her contract was only renewed through the spring semester of 2002, which meant that she could not apply for tenure the following year. CT Page 2925
"A motion to strike challenges the legal sufficiency of a pleading, and, consequently, requires no factual finding by the trial court." Craigv. Driscoll, 262 Conn. 312 (2003). "In ruling on a motion to strike, the court is limited to the facts alleged in the complaint." Faulkner v.United Technologies Corp., 240 Conn. 576, 580 (1997). "It is fundamental that in determining the sufficiency of a complaint challenged by a defendant's motion to strike, all well-pleaded facts and those facts necessarily implied from the allegations are taken as submitted are taken as admitted." Gazo v. Stamford, 255 Conn. 245, 260 (2001). The court must "construe the complaint in the manner most favorable to sustaining its legal sufficiency." Craig v. Driscoll, supra 321.
 AS TO COUNT ONE
The plaintiff alleges that the defendant "violated § 31-51q by retaliating against [the] plaintiff for exercising her [f]irst [a]mendment right to speak out on matters of public concern in denying her tenure and failing to renew her contract." (Plaintiff's Complaint, Count One ¶ 14.)[2]
The defendant moves to strike count one on the ground that the plaintiff has failed to allege that she had been disciplined or discharged as required by § 31-51q. The defendant argues that the denial of the plaintiff's application for tenure and promotion and the renewal of her contract through spring 2002 does not constitute discharge or discipline within the meaning of § 31-51q. Plaintiff argues in opposition that the denial of tenure by the defendant constitutes a discharge or discipline within the meaning of § 31-51q.
Section 31-51q states in pertinent part: "Any employer . . . who subjects any employee to discipline or discharge on account of the exercise by such employee of rights guaranteed by thefirst amendment of the United States Constitution or section 3, 4 or 14 of article first of the Constitution of the state, provided such activity does not substantially or materially interfere with the employee's bona fide job performance or the working relationship between the employee and the employer, shall be liable to such employee for damages caused by such discipline or discharge . . ." "Section 31-51q protects from retaliatory discharge an employee who invokes constitutionally guaranteed free speech rights that, in turn, protect statements that address a matter of public concern." Daley v. Aetna Life Casualty, Co., 249 Conn. 766, 776
(1999).
In Bombalicki, the plaintiff claimed that he was passed over for promotion from sergeant to lieutenant in the New Haven police department CT Page 2926 by sergeants who ranked below him on the civil service eligibility examination. In determining whether the failure to promote constituted "discipline" within the meaning of § 31-51q, the court examined the dictionary definition of "discipline"; the legislative history of §31-51q; the statutory text; analogous statutes using the term "discipline"; and policy considerations. Thus, the court stated that "`[d]iscipline' involves affirmative acts of punishment that . . . leave the recipients in a less happy state than that which they enjoyed before the punishment began. A withholding of a benefit — even a benefit that was due or promised does not fit this pattern. `Discipline' is an affirmative act of deprivation that diminishes the status or happiness of the recipient rather than a failure to enhance that status or happiness."Bombalicki v. Pastore, Superior Court, judicial district of New Haven, CV 0378772 (May 10, 2000, Blue, J.) 27 Conn.L.Rptr. 183, aff'd on other grounds, 71 Conn. App. 835, 804 A.2d 856 (2002). The court held that the denial of a promotion does not constitute discipline or discharge within the meaning of § 31-51q. Id.
 Bombalicki is similar to the present case in that both plaintiffs bring a claim under § 31-51q because they were denied a promotion by their respective employers. As that term is recognized and defined in Pastore, the plaintiff has failed to allege that she has been "disciplined." Thus, in order for the plaintiff to come within § 31-51q she must allege that she was discharged by the defendant.
In determining whether the plaintiff has been discharged the court should look to Douglas v. Board of Trustees for Connecticut StateUniversity, Superior Court, judicial district of New Haven, Docket No. CV 95 0372571 (April 8, 1999, Silbert, J.), which is similar to the present case. In Douglas, the plaintiff was hired as a non-tenured full-time assistant professor and applied for the position of a tenured track assistant professor and chairperson of the finance and law department. The plaintiff was denied both jobs. When the plaintiff's employment contract lapsed he was not rehired. In finding no violation of § 31-51q
on the part of the defendant, the court held "it is apparent . . . that [Douglas] was actually not discharged . . ." Douglas v. Board of Trusteesfor Connecticut State University, supra, Superior Court, Docket No. CV 95 0372571.
The court finds that in the present case the defendant's denial of the plaintiff's application for tenure and promotion, as well as the non-renewal of her contract was not a discharge and that count one of the complaint should be stricken because the plaintiff has not met the requirements of § 31-51q. CT Page 2927
 AS TO COUNT FOUR
Count four incorporates paragraphs one through sixteen of count one and further alleges that defendant's conduct in failing to promote the plaintiff to a tenured position and renew her contract because she was exercising her first amendment right to speak out on matters of public concern was extreme and outrageous.
The defendant moves to strike count four on the ground that the plaintiff's claim for intentional infliction of emotional distress is legally insufficient because, "there are no acts alleged in [c]ount [f]our which rise to the level of extreme and outrageous, and therefore [the plaintiff's] claim for intentional infliction of emotional distress cannot survive." (Defendant's Memorandum in Support of the Motion to Strike, p. 5.) The plaintiff argues in opposition that the defendant's conduct of denying her tenure and not renewing her contract in "retaliation for expressing her opinion on matters of clear public concern in connection with her academic pursuits should be deemed intentional infliction of emotional distress per se." (Emphasis in Original.) (Plaintiff's Memorandum in Opposition to the Motion to Strike, p. 14.)
"In order for the plaintiff to prevail in a case for liability under . . . [intentional infliction of emotional distress], four elements must be established. It must be shown: (1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe." (Internal quotation marks omitted.)Appleton v. Board of Education, 254 Conn. 205, 210, 757 A.2d 1059
(2000).
"Liability for intentional infliction of emotional distress requires conduct that exceeds all bounds usually tolerated by decent society . . . Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, `Outrageous!' . . . Conduct on the part of the defendant that is merely insulting or displays bad manners or results in hurt feelings is insufficient to form the basis for an action based upon intentional infliction of emotional distress." (Citations omitted; internal quotation CT Page 2928 marks omitted.) Id., 210-11.
In Appleton v. Board of Education, supra, 254 Conn. 211, the plaintiff was allegedly subjected to condescending comments in front of colleagues, two psychiatric examinations, a police escort from the workplace, suspension and a forced resignation. In finding that the defendant's alleged conduct was not extreme and outrageous, the court held that because "the defendant's actions . . . were not so atrocious as to exceed all bounds usually tolerated by decent society, their conduct is insufficient to form the basis of an action for intentional infliction of emotional distress." Id., 212. The conduct alleged by the plaintiff in the present case does not rise to the level of the alleged conduct asserted by the plaintiff in Appleton, which the court found not to be extreme and outrageous. Requesting that a teacher restructure her curriculum and denying the plaintiff a tenured position is not the sort of extreme and outrageous behavior that would lead an average member of the community to exclaim, "Outrageous!"
The court finds that the alleged conduct of the defendant in the present case does not rise to the level of "extreme and outrageous," as those terms have been construed by our Supreme Court. For that reason, the defendant's motion to strike count four is hereby granted.
 By the Court, JOSEPH W. DOHERTY, JUDGE