JOAN CARNEMOLLA *v.* MARK WALSH ET AL.
(AC 22512)

Foti, Schaller and West, Js.

Argued September 23, 2002—officially released March 4, 2003

*William R. Moller,* for the appellant (plaintiff).

*Mary Jane Ryan,* with whom, on the brief, was *Joseph B. Summa,* for the appellees (defendants).

*Opinion*

SCHALLER, J. The plaintiff, Joan Carnemolla, appeals from the summary judgment rendered by the trial court in favor of the defendants, Mark Walsh, Robert Walsh and Walsh's Market, LLC. On appeal, the plaintiff claims that the court improperly granted the defendants' motion for summary judgment as to all three counts of the plaintiff's complaint. Specifically, the plaintiff argues that the rendering of summary judgment was improper because (1) she was wrongfully discharged from her employment in violation of an important public policy, (2) the termination of her employment constituted extreme and outrageous con-

duct, and (3) the defendants' request for restitution was the equivalent of embezzlement and extortion.

The following facts and procedural history are relevant to our resolution of the plaintiff's appeal. In 1997, Robert Walsh hired the plaintiff as a part-time accounts receivable clerk for Walsh's Market, LLC. During her employment, the plaintiff was not eligible for medical insurance coverage at the employer's expense. Instead, the plaintiff was permitted to participate in the employer sponsored group plan as long as she paid the full premium rate herself.

During the spring of 1996, Rick Champagne, the operating accountant for Walsh's Market, LLC, informed the plaintiff that her monthly health insurance premiums would be increasing. Considering those premiums too costly, the plaintiff informed Champagne that she could no longer afford the increased rate and would seek employment elsewhere. Valuing the plaintiff's skills and experiences, and hoping to retain her as an employee, Champagne offered to pay the plaintiff for additional hours, which the plaintiff would not actually work, to defray the increased insurance premium rates. The plaintiff agreed. The plaintiff claimed that Robert Walsh was aware of that arrangement and that it constituted a contract between Robert Walsh and herself. Relying on Champagne's representations, the plaintiff believed that she had not misappropriated funds from Walsh's Market, LLC. That alleged agreement was never reduced to a writing.

In August, 1999, Robert Walsh gave his ownership interest in the company to his son, Mark Walsh. Mark Walsh soon discovered discrepancies in the plaintiff's time card. After consulting with an attorney, Robert Walsh and Mark Walsh confronted the plaintiff with respect to the discrepancies, and demanded that she sign a resignation and release. Later, on September 1, 1999, Robert Walsh and Mark Walsh demanded, under

threat of criminal action, that the plaintiff repay them $7000 as restitution. The plaintiff refused to repay the requested funds.

The plaintiff commenced this civil action by complaint dated September 7, 1999, and subsequently filed a revised complaint dated December 6, 1999. In the revised three count complaint, the plaintiff alleged wrongful discharge, intentional infliction of emotional distress and a civil cause of action for attempt to commit extortion pursuant to General Statutes § 53a-119 (5) (D).[1]

Following the plaintiff's filing of the revised complaint, she was arrested and charged with the crimes of larceny in the first degree and conspiracy to commit larceny in violation of General Statutes §§ 53a-122 (a) (2)[2] and 53a-48.[3] In *State* v. *Carnemolla*, Superior Court, judicial district of Waterbury, Docket No. CR 288318 (February 28, 2001), by a unanimous verdict of the jury, the plaintiff was found guilty of the crimes charged.[4]

---

[1] General Statutes § 53a-119 provides in relevant part: "A person commits larceny when, with intent to deprive another of property or to appropriate the same to himself or a third person, he wrongfully takes, obtains or withholds such property from an owner. . . .

General Statutes § 53a-119 (5) provides in relevant part: "Extortion. A person obtains property by extortion when he compels or induces another person to deliver such property to himself or a third person by means of instilling in him a fear that, if the property is not so delivered, the actor or another will . . . (D) accuse some person of a crime or cause criminal charges to be instituted against him . . . ."

[2] General Statutes § 53a-122 (a) provides in relevant part: "A person is guilty of larceny in the first degree when he commits larceny, as defined in section 53a-119, and . . . (2) the value of the property or service exceeds ten thousand dollars . . . ."

[3] General Statutes § 53a-48 (a) provides: "A person is guilty of conspiracy when, with intent that conduct constituting a crime be performed, he agrees with one or more persons to engage in or cause the performance of such conduct, and any one of them commits an overt act in pursuance of such conspiracy."

[4] The plaintiff appealed from her criminal conviction. On April 2, 2002, this court affirmed the judgment in a per curiam opinion. See *State* v. *Carnemolla*, 68 Conn. App. 911, 796 A.2d 636 (2002).

Shortly thereafter, in the civil action, the defendants filed a motion for a postponement of the trial and a motion for leave to file a motion for summary judgment on the basis of the plaintiff's criminal conviction. The court granted the defendants' motion for a postponement and granted the motion for summary judgment as to all three counts of the plaintiff's revised complaint. This appeal followed. Additional facts will be set forth as necessary.

The plaintiff claims that the court improperly granted the defendants' motion for summary judgment as to her three count complaint. We disagree.

"Our standard of review of a trial court's granting of summary judgment is well established. Pursuant to Practice Book § 17-49, summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any *material* fact and that the moving party is entitled to judgment as a matter of law. Such questions of law are subject to plenary appellate review." (Emphasis added; internal quotation marks omitted.) *Mytych* v. *May Dept. Stores Co.*, 260 Conn. 152, 158–59, 793 A.2d 1068 (2002). Although facts may be in dispute, the disputed facts must be material. That is, the facts must satisfy the elements of claims for wrongful discharge,[5] intentional infliction of emotional distress[6] and attempt

---

[5] A cognizable claim for wrongful discharge requires the plaintiff to establish that the employer's conduct surrounding the termination of the plaintiff's employment violated an important public policy. See *Sheets* v. *Teddy's Frosted Foods, Inc.*, 179 Conn. 471, 474–80, 427 A.2d 385 (1980).

[6] To establish a claim for the intentional infliction of emotional distress, the plaintiff must show "(1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe." (Internal quotation marks omitted.) *Parsons* v. *United Technologies Corp.*, 243 Conn. 66, 101, 700 A.2d 655 (1997).

to commit extortion.[7] We do not make a factual determination, but instead conclude, as a matter of law, that due to the preclusive effect of collateral estoppel given to the facts at the criminal trial concerning her status as an at-will employee, the facts here were not in dispute. The court, therefore, properly granted the defendants' motion for summary judgment.

We will review the rendering of summary judgment as to each count of the plaintiff's complaint in turn.

I

WRONGFUL DISCHARGE

The plaintiff argues that the court improperly granted the defendants' motion for summary judgment as to count one of her complaint, which alleged wrongful discharge, because (1) she had a contract of employment and, as such, her employment could be terminated only for cause, and (2) in the alternative, if this court concludes that she did not have a contract of employment, but instead was an at-will employee, then the termination of her employment violated an important public policy. We are not persuaded by the plaintiff's argument and agree with the court's judgment.

A claim for wrongful discharge requires the plaintiff to establish that the employer's conduct surrounding the termination of the plaintiff's employment violated an important public policy. See *Sheets* v. *Teddy's Frosted Foods, Inc.*, 179 Conn. 471, 474–80, 427 A.2d 385 (1980). In the absence of an employment contract, an employer and employee will be deemed to have an at-will employment relationship. See *Thibodeau* v. *Design Group One Architects, LLC*, 64 Conn. App. 573, 577, 781 A.2d 363 (2001), rev'd on other grounds, 260 Conn. 691, 802 A.2d 731 (2002).

---

[7] See footnote 1.

In support of their motion for summary judgment, the defendants argued that because the jury in the criminal proceeding had found that the plaintiff was an at-will employee, she was precluded from relitigating that issue.[8] The plaintiff argues that because she appealed from the criminal conviction, she is not precluded from relitigating those issues. As an initial matter, we must determine whether it was proper for the court to grant the defendants' motion for summary judgment during the pendency of the plaintiff's criminal appeal when the defendants predicated their claim of collateral estoppel on the merits of the underlying criminal judgment.[9]

Our review of the application of collateral estoppel by the trial court is de novo. See *Davenport* v. *Quinn*, 53 Conn. App. 282, 298, 730 A.2d 1184 (1999). "Collateral estoppel, or issue preclusion, prohibits the relitigation of an issue when that issue was actually litigated and necessarily determined in a prior action. . . . For an issue to be subject to collateral estoppel, it must have been fully and fairly litigated in the first action. It also must have been actually decided and the decision must have been necessary to the judgment. . . . Furthermore, [t]o invoke collateral estoppel the issues sought to be litigated in the new proceeding must be identical to those considered in the prior proceeding. . . .

"An issue is actually litigated if it is properly raised in the pleadings or otherwise, submitted for determination, and in fact determined. . . . An issue is necessarily determined if, in the absence of a determination of

---

[8] Additionally, the jury in the criminal trial also found that (1) there was not a contract between the parties wherein the plaintiff would be compensated for hours not worked, (2) that there was a misappropriation of company funds and (3) that the plaintiff illegally deprived the defendants of funds.

[9] We note that the plaintiff's claim of an improper use of collateral estoppel is limited only to count one of the complaint concerning an allegation of wrongful discharge.

the issue, the judgment could not have been validly rendered. . . . If an issue has been determined, but the judgment is not dependent upon the determination of the issue, the parties may relitigate the issue in a subsequent action. Findings on nonessential issues usually have the characteristics of dicta." (Internal quotation marks omitted.) *Rosenfield* v. *Rogin, Nassau, Caplan, Lassman & Hirtle, LLC*, 69 Conn. App. 151, 154–55, 795 A.2d 572 (2002); *R & R Pool & Patio, Inc.* v. *Zoning Board of Appeals*, 60 Conn. App. 82, 91–92, 758 A.2d 462 (2000), rev'd on other grounds, 257 Conn. 456, 778 A.2d 61 (2001).

"Historically, the doctrine of collateral estoppel, or issue preclusion, required mutuality of the parties. . . . Under the mutuality rule, [p]arties who were not actually adverse to one another in a prior proceeding could not assert collateral estoppel against one another in a subsequent action. . . .

"The mutuality requirement has, however, been widely abandoned as an ironclad rule. . . . [It] no longer operate[s] automatically to bar the use of collateral estoppel . . . but . . . circumstances may exist in which lack of mutuality would render application of collateral estoppel unfair." (Citations omitted; internal quotation marks omitted.) *Torres* v. *Waterbury*, 249 Conn. 110, 135–36, 733 A.2d 817 (1999).

To proceed with the analysis, we must first state that mutuality, in this case, is not a bar to the court's application of collateral estoppel. See *Griffin* v. *Parker*, 22 Conn. App. 610, 615, 623, 579 A.2d 532 (1990) (despite lack of mutuality between parties, prior conviction estopped party in later civil action from contesting facts necessarily established in criminal proceeding), rev'd on other grounds, 219 Conn. 363, 593 A.2d 124 (1991).

Our Supreme Court has stated that res judicata may apply despite the fact that the judgment on which it is

based has been appealed. See *Salem Park, Inc.* v. *Salem,* 149 Conn. 141, 144, 176 A.2d 571 (1961); see also *Capalbo* v. *Planning & Zoning Board of Appeals,* 208 Conn. 480, 488, 547 A.2d 528 (1988) (" 'trial court judgment has been held to be final, despite a pending appeal, insofar as the . . . applicability of the rules of res judicata' " [citations omitted]). "The fact that a prior judicial determination may be flawed . . . is ordinarily insufficient, in and of itself, to overcome a claim that otherwise applicable principles of res judicata preclude it from being collaterally attacked. . . . If the judgment [in the prior action] is erroneous, the unsuccessful party's remedy is to have it set aside or reversed in the original proceedings. . . . *CFM of Connecticut, Inc.* v. *Chowdhury,* 239 Conn. 375, 395, 685 A.2d 1108 (1996) [overruled in part on other grounds, *State* v. *Salmon,* 250 Conn. 147, 154–55, 735 A.2d 333 (1999) (en banc)]; see also *Deposit Bank* v. *Frankfort,* 191 U.S. 499, 24 S. Ct. 154, 48 L. Ed. 276 (1903); *Ellentuck* v. *Klein,* 570 F.2d 414 (2d Cir. 1978); 1 Restatement (Second), [Judgments] § 17, comment (d), p. 150 [1982]." (Internal quotation marks omitted.) *Tirozzi* v. *Shelby Ins. Co.,* 50 Conn. App. 680, 686, 719 A.2d 62, cert. denied, 247 Conn. 945, 723 A.2d 323 (1998).

"Claim preclusion (res judicata) and issue preclusion (collateral estoppel) have been described as related ideas on a continuum. [C]laim preclusion prevents a litigant from reasserting a claim that has already been decided on the merits. . . . [I]ssue preclusion, prevents a party from relitigating an issue that has been determined in a prior suit." (Internal quotation marks omitted.) *Dowling* v. *Finley Associates, Inc.,* 248 Conn. 364, 373, 727 A.2d 1245 (1999). It can be stated, therefore, that collateral estoppel is an aspect of res judicata. See *R & R Pool & Patio, Inc.* v. *Zoning Board of Appeals,* 257 Conn. 456, 466, 778 A.2d 61 (2001). Because collateral estoppel is a much narrower aspect of res judicata,

and a pending appeal does not preclude the application of res judicata, we conclude that the plaintiff's pending appeal in the criminal action did not preclude the defensive application of collateral estoppel in the civil action.

On the basis of the determination in the criminal action, therefore, we conclude that the plaintiff was an at-will employee. The guilty verdict in the criminal action necessarily means that the jury found that there existed no contract between the parties to pay for hours that the plaintiff did not work. Moreover, the court, in its memorandum of decision in the civil action, stated that the plaintiff did not provide any evidence that she and the defendants had engaged in negotiations regarding the term of her employment, that she had a written contract requiring just cause for termination or that the defendants ever had told her that her employment could be terminated only for cause. The plaintiff herself stated: "I never even had to fill out an application with the Walshes. . . . I was hired verbal. Everything that happened between the Walshes and I was verbal."[10]

---

[10] There is no material issue of fact with respect to the plaintiff's status as an at-will employee while she was employed at Walsh's Market, LLC. The facts alleged in support of the plaintiff's position, that she had a contract of employment, are not material because, on the basis of the plaintiff's conviction of larceny in the first degree and conspiracy to commit larceny, we conclude that she was an at-will employee.

In count one of her revised complaint, the plaintiff claims that she was wrongfully discharged. Specifically, she alleges that her discharge was predicated on "false reasons" and "was improper because it violated the contract with the defendant, Robert Walsh, which had been fully performed by all the parties each year since 1996 by structuring the [p]laintiff's pay in order to be able to deduct therefrom the premium on her health insurance." During the criminal trial, the jury considered the issue of the plaintiff's employment status. During that trial, the plaintiff acknowledged that she had never entered into any written employment contract with the defendants. The plaintiff acknowledged receiving $14,500 over a period of four years in exchange for hours that she had not worked. She did not deny entering into that payment scheme with Champagne. Neither the plaintiff nor Champagne denied that the $14,500 that the plaintiff received was as a result of that scheme. The plaintiff could have been convicted of the crimes only if the jury concluded that (1) no such *contract* existed, (2) her receipt and acceptance of such moneys constituted a wrongful taking of property rightfully belonging

Having determined that the plaintiff is collaterally estopped from relitigating the status of her employment, and having accepted the finding that she was an at-will employee, we conclude that the plaintiff was required to prove that her employment was terminated for an improper reason and that the impropriety derived from a violation of an important public policy. See *Magnan* v. *Anaconda Industries, Inc.*, 193 Conn. 558, 572, 479 A.2d 781 (1984). To determine whether a public policy has been violated, courts examine whether the "discharge violated any explicit statutory or constitutional provision . . . [or] contravened any judicially conceived notion of public policy." *Morris* v. *Hartford Courant Co.*, 200 Conn. 676, 680, 513 A.2d 66 (1986). "In the absence of a public policy violation, there is no breach of the implied covenant of good faith and fair dealing." *Doherty* v. *Sullivan*, 29 Conn. App. 736, 743, 618 A.2d 56 (1992).[11]

The plaintiff argues that the termination of her employment violated an important public policy on two grounds. First, the plaintiff argues that the defendants' actions constituted extortion in violation of § 53a-119 (5) (D). That is, she argues that the defendants' request for restitution in the amount of $7000, coupled with the

to the defendants and (3) she intended to wrongfully take the defendants' property. See General Statutes § 53a-119. Consequently, the guilty verdict in the criminal action necessarily means that the jury found that the plaintiff was an at-will employee. Because the plaintiff is collaterally estopped from relitigating that issue, the facts alleged on appeal, even if in dispute, are not material.

[11] Because we conclude that the plaintiff has failed to provide evidence of a violation of an important public policy, her wrongful discharge claim fails and, therefore, her claim that the defendants breached the implied covenant of good faith and fair dealing also must fail. Consequently, we cannot reach the merits of the plaintiff's argument that material facts exist concerning the alleged violation of the implied covenant of good faith and fair dealing under *Magnan* v. *Anaconda Industries, Inc.*, supra, 193 Conn. 566, stemming from the alleged meeting she had on August 24, 1999, with the defendants in which they allegedly sought repayment from her.

threat of criminal prosecution, amounted to a violation of Connecticut's public policy against extortion. Because we conclude that § 53a-119 (5) (D) does not apply where victims of a crime seek restitution, we disagree with the plaintiff.

The defendants' actions did not violate § 53a-119. "A person commits larceny when, with intent to deprive another of property or to appropriate the same to himself or a third person, he *wrongfully* takes, obtains or withholds such property from an *owner*. . . ." (Emphasis added.) General Statutes § 53a-119. Pursuant to the statute, larceny includes extortion under § 53a-119 (5) (D). To satisfy the statutory elements of larceny, however, the victim must be an "owner" of the property that was taken wrongfully. The term "owner" is defined under § 53a-118 (a) (5) as "any person who has a right to possession superior to that of a taker, obtainer or withholder." The jury in the criminal trial already had determined that the funds were misappropriated; that is, with respect to the defendants, the moneys were not "property of another," and the defendants had a right to possession of the funds. Therefore, the defendants could not have violated § 53a-119 (5) (D) because the defendants, not the plaintiff, were the owners of the moneys and, thus, could not have wrongfully taken the moneys from her.

Next, the plaintiff argues that the "manner" in which her employment was terminated violated an important public policy. The plaintiff provides no evidence that the defendants' action in discharging her violated any public policy. In support of her argument, the plaintiff merely states that her discharge violated public policy because she was confronted by the defendants with their attorney present and with prepared documents that purportedly were resignation and release forms, she had absolutely no way to present her side of the case, and she was not given the right to seek counsel

or even permitted to speak with her family. Considering those facts in the light most favorable to the plaintiff, we conclude, as a matter of law, that the termination of her employment did not violate an important public policy. As previously stated, the plaintiff was found guilty of having committed larceny in the first degree and conspiracy to commit larceny. In light of the plaintiff's criminal conviction, we conclude that her employment was not terminated wrongfully and that summary judgment as to that count of her complaint was granted properly. See *Morris* v. *Hartford Courant Co.*, supra, 200 Conn. 680 (even "false but negligently made accusation of criminal conduct as a basis for dismissal is not a 'demonstrably improper reason for dismissal' ").

## II

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

The plaintiff argues that the court improperly granted the defendants' motion for summary judgment as to count two of her complaint, which alleged intentional infliction of emotional distress. We are not persuaded.

At the outset, we note the law relevant to an allegation of intentional infliction of emotional distress. "[F]or the plaintiff to prevail in a case for liability under . . . [intentional infliction of emotional distress], four elements must be established. It must be shown: (1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe. . . . Whether a defendant's conduct is sufficient to satisfy the requirement that it be extreme and outrageous is initially a question for the court to determine. . . . Only where reasonable minds disagree

does it become an issue for the jury. . . . Liability for intentional infliction of emotional distress requires conduct that exceeds all bounds usually tolerated by decent society." (Internal quotation marks omitted.) *Bombalicki* v. *Pastore*, 71 Conn. App. 835, 839–40, 804 A.2d 856 (2002).

"Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!' . . . Conduct on the part of the defendant that is merely insulting or displays bad manners or results in hurt feelings is insufficient to form the basis for an action based upon intentional infliction of emotional distress." (Citation omitted; internal quotation marks omitted.) *Appleton* v. *Board of Education*, 254 Conn. 205, 210–11, 757 A.2d 1059 (2000).

Viewing the evidence in the light most favorable to the plaintiff, we conclude, as a matter of law, that the defendants' conduct did not constitute extreme and outrageous conduct. In so doing, we first summarize the relevant facts and define the defendants' conduct. In support of her claim, the plaintiff alleges the following facts to illustrate the alleged extreme and outrageous conduct of the defendants. The plaintiff was a devoted mother and employee, she was an honest person who had never been accused of a crime, she was confronted by the defendants, who accused her of embezzling company funds and requested that she sign documents that purportedly were resignation and release forms, a coworker resigned after observing the way in which the plaintiff was treated, and the plaintiff

received medical treatment and counseling for emotional upset.

In *Dollard* v. *Board of Education*, 63 Conn. App. 550, 552–53, 777 A.2d 714 (2001), the plaintiff alleged that the defendants hypercritically scrutinized every aspect of her work and personal life, publicly admonished her and organized a plan to force her to resign. Despite those allegations, this court determined that the defendants' actions did not constitute outrageous or extreme conduct. Id., 554; see also *Appleton* v. *Board of Education*, supra, 254 Conn. 211 (extreme or outrageous conduct not found where plaintiff subjected to condescending comments made by employer and psychiatric evaluations, escorted off employer's premises by police and forced to resign).

Although the conduct alleged in this case may have been distressful or hurtful to the plaintiff, it was not outrageous or extreme. We therefore agree with the court that summary judgment as to the claim of intentional infliction of emotional distress was proper.

## III

### ATTEMPT TO COMMIT EXTORTION

The plaintiff's final argument is that the court improperly granted the defendants' motion for summary judgment as to count three of her complaint, which alleged attempt to commit embezzlement and extortion. Specifically, the plaintiff argues that the defendants violated § 53a-119 (5) (D) by demanding that she pay restitution in the amount of $7000 or face the threat of criminal charges. For the reasons set forth in part I A, we agree with the decision of the court.

The judgment is affirmed.

In this opinion the other judges concurred.