******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

APPENDIX

## PABLO ORTIZ, JR. *v.* LESLIE TORRES-RODRIGUEZ*

Superior Court, Judicial District of Hartford
File No. CV-17-6081625-S

Memorandum filed May 14, 2020

*Proceedings*

Memorandum of decision on defendant's motion for summary judgment. *Motion granted.*

*Pablo Ortiz, Jr.*, self-represented, the plaintiff.

*Channez M. Rogers* and *David S. Monastersky*, for the defendant.

*Opinion*

NOBLE, J. Before the court is the motion of the defendant, Leslie Torres-Rodriguez, for summary judgment. For the following reasons the motion is granted.

In his revised complaint filed September 19, 2018, the plaintiff, Pablo Ortiz, Jr., alleges the following facts. The defendant was at all times relevant to the complaint acting in her capacity as the interim superintendent of schools for the Hartford Board of Education. In 2010, the plaintiff was hired by the then superintendent to coach the Bulkeley High School football and basketball varsity programs.[1] On January 25, 2017, the defendant received a letter from an assistant football coach in which he complained about the plaintiff's coaching temperament, and referenced similar complaints from former players and a parent. On January 27, 2017, the defendant terminated the plaintiff by letter. The plaintiff claims that the defendant failed to follow school protocols and policies in one or more of the following ways: the termination occurred prior to the completion of an investigation by the Department of Children and Families (DCF); the school protocols and policies required deference to the DCF investigation and findings; the protocols and policies required the provision of due process in any investigation; and school policy limited the defendant's authority to discipline the plaintiff, during a DCF investigation of suspected abuse, to suspension with pay pending the outcome of the investigation.

The plaintiff further alleges that, one day after the plaintiff's termination became public, the defendant issued a press statement in response to questions about the plaintiff's termination, stating: "The first priority of the Hartford [p]ublic [s]chools is to ensure student safety. As [a]cting [s]uperintendent of [s]chools, I will not allow any unacceptable staff behavior during my tenure. In the unfortunate event that, despite our best efforts to the contrary, individuals engage in inappropriate interactions with students, with their families, with staff or with any of the visitors who come to our schools and events, such individuals will be dealt with swiftly in accordance with the policies established by the Hartford Board of Education." At some point, DCF initiated an investigation of the plaintiff for abuse. In March or April, 2017, DCF concluded its investigation. The investigation cleared the plaintiff of any wrongdoing, specifically finding that there were no valid claims of abuse or neglect by him. The defendant, after DCF concluded its investigation, did not rehire the plaintiff or retract her earlier statement.

The plaintiff alleges in count one of his complaint that the defendant was reckless, largely in her conduct in terminating the plaintiff, but also by making inaccuracies in the press statement. The plaintiff claims injury

therefrom related to loss of his reputation, loss of job, emotional distress and lost wages. Count two alleges intentional infliction of emotional distress based on the conduct alleged in count one and sets forth identical injuries. Count three alleges a claim for libel based on the press statement issued the day after the plaintiff's termination that indicated he was guilty of unacceptable behavior, was a danger to students, needed to be dealt with swiftly and terminated pursuant to the investigatory protocols of the [Hartford public schools] (HPS) system. The plaintiff claims no specific damages but alleges merely libel done to severely stigmatize the plaintiff in order to enhance the defendant's job prospects, public standing and financial well-being.

In support of the defendant's motion for summary judgment, she offers the affidavits of Natasha Banks, executive director of human resources for HPS; Milly Ramos, labor relations specialist for HPS; and her own affidavit. Banks' affidavit undercuts the factual theme of the plaintiff's claims. In her affidavit, Banks sets out that the plaintiff's employment with HPS was that of an at-will employee. She avers that, as executive director of human resources for HPS, she oversees the hiring and termination of athletic coaches such as the plaintiff, and so it was she, and not the defendant, who terminated the plaintiff. She did so after becoming aware of a complaint from an assistant coach as well as complaints from twenty-eight former and current players regarding the plaintiff's conduct. The defendant had no role in the plaintiff's termination, was not consulted about it and was informed of Banks' decision only after he was terminated.

Ramos testified in her affidavit that, in her capacity as a labor relations specialist for HPS, she investigated the complaints from the assistant coach, and former and current players. The complaints addressed physical and verbal altercations with student athletes, parents and other coaches, name-calling, bullying, and unethical practices related to paying assistant coaches who had not been hired by HPS. Banks reported the complaints to DCF in accordance with HPS' obligation as a mandated reporter. Ramos never completed her investigation because Banks elected to terminate the plaintiff's at-will employment. She did learn, however, that some HPS personnel had received information that a student may have been "mentally bullied" and "jacked up and thrown on the ground" by an athletic coach but had failed in their obligation to report this information to DCF. Ramos lastly asserted that the defendant had no involvement in her investigation of the plaintiff or whether personnel had failed to make a mandated reporting.

The defendant's affidavit outlines her employment as acting superintendent at the times relevant to the plaintiff's complaint, that she had no authority to termi-

nate athletic coaches, she did not consult in his termination, did not participate in the investigation and did not terminate the plaintiff; rather, it was Banks who terminated the plaintiff. The defendant further provides in her affidavit that the statement she released to the press was only a general policy statement and was not specifically related to the plaintiff.

The defendant argues in her summary judgment motion that, because much of the plaintiff's claims center on his termination by the defendant, she is entitled to summary judgment as to these claims. Moreover, the defendant argues that the plaintiff is unable to establish the extreme or outrageous conduct necessary to support a claim for intentional infliction of emotional distress. Lastly, the defendant asserts that she is entitled to judgment on the libel claim because the statement was not defamatory and it did not identify the plaintiff.

The plaintiff offers no factual basis to dispute that he was an at-will employee or that, contrary to the allegations in his complaint, the defendant had no role in his termination. Instead, the plaintiff asserts that his recklessness claim "really has nothing to do with the decision terminating him from his employment, or failing to follow the abuse and neglect policy, but, rather, has to do with the conscious decision to utilize his termination as a platform for advancing [the defendant's] own agenda." Plaintiff's Opposition to Defendant's Motion for Summary Judgment, p. 23. In the plaintiff's view, the defendant was reckless "by insinuating that he was guilty of child abuse . . . ." Id. Similarly, the plaintiff claims that the defendant misconstrues his intentional infliction of emotional distress claim as being predicated on his termination per se but, rather, it is actually predicated on the press statement issued by the defendant. Lastly, the plaintiff asserts that the defendant's statement, in light of publicity related to his termination, was clearly about him and was clearly false.

### STANDARD

"Practice Book § 17-49 provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party." (Internal quotation marks omitted.) *Graham* v. *Commissioner of Transportation*, 330 Conn. 400, 414–15, 195 A.3d 664 (2018).

"[T]he genuine issue aspect of summary judgment requires the parties to bring forward before trial evidentiary facts, or substantial evidence outside the pleadings, from which the material facts alleged in the pleadings can warrantably be inferred. . . . A material fact

has been defined adequately and simply as a fact which will make a difference in the result of the case." (Citation omitted; internal quotation marks omitted.) *Buell Industries, Inc.* v. *Greater New York Mutual Ins. Co.*, 259 Conn. 527, 556, 791 A.2d 489 (2002).

"The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact." (Internal quotation marks omitted.) *Doe* v. *West Hartford*, 328 Conn. 172, 191, 177 A.3d 1128 (2018). "It is not enough, however, for the opposing party merely to assert the existence of such a disputed issue. Mere assertions of fact . . . are insufficient to establish the existence of a material fact and, therefore, cannot refute evidence properly presented to the court under Practice Book § 380 [now § 17-45]." (Internal quotation marks omitted.) *Fiano* v. *Old Saybrook Fire Co. No. 1, Inc.*, 332 Conn. 93, 101, 209 A.3d 629 (2019). "To oppose a motion for summary judgment successfully, the nonmovant must recite specific facts . . . which contradict those stated in the movant's affidavits and documents." (Internal quotation marks omitted.) *Parnoff* v. *Aquarion Water Co. of Connecticut*, 188 Conn. App. 153, 165, 204 A.3d 717 (2019). Last, "[o]nly evidence that would be admissible at trial may be used to support or oppose a motion for summary judgment." (Internal quotation marks omitted.) *Nash* v. *Stevens*, 144 Conn. App. 1, 15, 71 A.3d 635, cert. denied, 310 Conn. 915, 76 A.3d 628 (2013).

## DISCUSSION

### I

### Recklessness

The plaintiff's argument to the contrary, his complaint does assert that the defendant fired him. The complaint alleges in count one that the defendant was reckless in that: "(a) *she failed to follow any of the Hartford school system's protocols on investigation and/or discipline* . . . (b) in press statements, the defendant made it appear that the protocols had been followed when they had not; (c) in press statements, she concluded that the plaintiff had engaged in unacceptable behavior when no investigation had been done by her or anyone else and no findings had been formally made; (d) in press statements, the defendant indicated that such allegations should be dealt with swiftly despite a policy that required DCF deference and due process for the accused; (e) *she terminated the plaintiff without giving him any opportunity to be heard*; (f) she chose not to defer to the DCF investigation results *prior to terminating the plaintiff*; (g) *she chose*

*not to suspend the plaintiff during the investigation as required by the protocols*; (h) she utilized the wrongful termination of the plaintiff to further her interests in becoming the permanent superintendent in that she actively publicized to the Board of Education, the public and the press that the plaintiff's termination demonstrated how she would change the culture of not complying with DCF reporting requirements; and/or (i) she utilized the wrongful termination of the plaintiff to further her career interests in that she utilized mere allegations against the plaintiff to discipline another candidate for the permanent superintendent's job for the Hartford school system, thereby eliminating the third finalist from competing for the job she herself wanted." (Emphasis added.)

A review of these allegations reveals that subparagraphs (a), (e), (f) and (g) clearly allege conduct related to the manner in which the defendant terminated the plaintiff. Subparagraphs (b), (c) and (d) refer to inaccuracies in the press statements, and subparagraphs (h) and (i) refer to the defendant's motivation in utilizing the "wrongful termination" of the plaintiff. "The principle that a plaintiff may rely only upon what he has alleged is basic. . . . It is fundamental in our law that the right of a plaintiff to recover is limited to the allegations of his complaint." (Internal quotation marks omitted.) *Raffone* v. *Industrial Acceptance Corp.*, 119 Conn. App. 261, 268, 987 A.2d 1059 (2010).

Disposition of these claims involves two legal principles. "Employment at will grants both parties the right to terminate the relationship for any reason, or no reason, at any time without fear of legal liability." (Internal quotation marks omitted.) *Morrissey-Manter* v. *Saint Francis Hospital & Medical Center*, 166 Conn. App. 510, 520, 142 A.3d 363, cert. denied, 323 Conn. 924, 149 A.3d 982 (2016). When an employee is employed at will, then either the employee or the employer can terminate "the employment at any time with or without just cause . . . ." *Kwasnik* v. *Community Action Committee of Danbury, Inc.*, 43 Conn. App. 840, 844, 686 A.2d 526 (1996).

"[R]ecklessness is a serious or extreme departure from ordinary or reasonable care, and requires a conscious choice of a course of action involving serious dangers to others, either with knowledge of that serious danger, or with knowledge of facts which a reasonable person would recognize as being a serious danger to others." (Internal quotation marks omitted.) *Matthiessen* v. *Vanech*, 266 Conn. 822, 833–34, 836 A.2d 394 (2003).

With these principles in mind, the court grants summary judgment as to count one. As to those allegations that rely on the defendant's wrongful conduct in the manner in which the plaintiff was terminated, not only has the plaintiff offered no evidence to rebut the evi-

dence submitted by the defendant that she had nothing to do with his termination, the plaintiff has expressly abandoned such a claim in his brief. The court finds that, with respect to the claimed inaccuracies in the press statement, there is no evidence of an extreme departure from ordinary or reasonable care, with or without a conscious choice of a course of action involving serious dangers to others. Because the plaintiff was an at-will employee, proper protocols were followed with respect to his termination and any investigation. Even if the defendant's statement had made it appear that the plaintiff had engaged in unacceptable behavior, there is nothing, especially in light of the unrebutted evidence of the complaints against him, to demonstrate that it was a serious or extreme departure from an ordinary or reasonable standard of care. Last, because of the plaintiff's status as an at-will employee the last two subparagraphs alleging inappropriate utilization of his "wrongful termination," for whatever motivation, must also fail. Summary judgment is therefore granted as to count one.

## II

### Intentional Infliction of Emotional Distress

"In order for the plaintiff to prevail in a case for liability under . . . [the intentional infliction of emotional distress], four elements must be established. It must be shown: (1) that the actor intended to inflict emotional distress, or that he knew or should have known that emotional distress was a likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe." (Internal quotation marks omitted.) *Petyan* v. *Ellis*, 200 Conn. 243, 253, 510 A.2d 1337 (1986).

"Liability has been found only [when] the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, Outrageous! . . . Conduct on the part of the defendant that is merely insulting or displays bad manners or results in hurt feelings is insufficient to form the basis for an action based upon intentional infliction of emotional distress." (Internal quotation marks omitted.) *Carnemolla* v. *Walsh*, 75 Conn. App. 319, 332, 815 A.2d 1251, cert. denied, 263 Conn. 913, 821 A.2d 768 (2003). "Whether a defendant's conduct is sufficient to satisfy the requirement that it be extreme and outrageous is initially a question for the court to determine." *Appleton* v. *Board of Education*, 254 Conn. 205, 210, 757 A.2d 1059 (2000). The conduct at issue must be "beyond all possible

bounds of decency . . . atrocious, and utterly intolerable in a civilized community." (Internal quotation marks omitted.) Id., 211.

The court grants summary judgment as to count two. The statement made by the defendant is not sufficiently extreme and outrageous to constitute intentional infliction of emotional distress as a matter of law. The statement that the plaintiff cites as the basis of his complaint is: "The first priority of the Hartford [p]ublic [s]chools is to ensure student safety. As [a]cting [s]uperintendent of [s]chools, I will not allow any unacceptable staff behavior during my tenure. In the unfortunate event that, despite our best efforts to the contrary, individuals engage in inappropriate interactions with students, with their families, with staff or with any of the visitors who come to our schools and events, such individuals will be dealt with swiftly in accordance with the policies established by the Hartford Board of Education." The plaintiff contends that this statement labeled the plaintiff as "an abuser of children, and publicly insinuat[ed] that his termination was due to his indiscretions . . . ." Plaintiff's Opposition to Defendant's Motion for Summary Judgment, p. 26.

What the plaintiff contends the statement says is not supported by the statement itself. The statement does not mention the plaintiff, it does not mention his termination and it does not mention child abuse. Although the timing of the statement is suspicious, coming soon after the plaintiff's termination and as a response to questions concerning the plaintiff's termination, the statement itself does not rise to the level of arousing the resentment of an average member of the community against the plaintiff, leading to an exclamation of, Outrageous! See Exhibit S; *Carnemolla* v. *Walsh*, supra, 75 Conn. App. 332. The statement makes reference only to "unacceptable staff behavior" and "inappropriate interactions with students." Even if the defendant were found to have been referring to the plaintiff, such comments do not rise to the level of being beyond all possible bounds of decency, or atrocious or utterly intolerable. See *Appleton* v. *Board of Education*, supra, 254 Conn. 211. Summary judgment is therefore granted as to count two.

### III

### Libel

"In an action for defamation, a public official is prohibited from recovering damages for a defamatory falsehood relating to his official conduct unless he proves by clear and convincing evidence that the falsehood was published with actual malice. . . . The state of mind that constitutes actual malice has been defined as with knowledge that it was false or with reckless disregard of whether it was false or not." (Citations omitted; internal quotation marks omitted.) *Kelley* v.

*Bonney*, 221 Conn. 549, 580, 606 A.2d 693 (1992).

The press statement that the plaintiff claims libeled him again provides: "The first priority of the Hartford [p]ublic [s]chools is to ensure student safety. As [a]cting [s]uperintendent of [s]chools, I will not allow any unacceptable staff behavior during my tenure. In the unfortunate event that, despite our best efforts to the contrary, individuals engage in inappropriate interactions with students, with their families, with staff or with any of the visitors who come to our schools and events, such individuals will be dealt with swiftly in accordance with the policies established by the Hartford Board of Education." The plaintiff does not claim that the press statement is intrinsically false. As previously mentioned, the plaintiff advances the view that this statement insinuates that he was a child abuser. The plaintiff argues that the press statement must be taken in the context of newspaper articles related to his firing, which, when read in conjunction with the press statement, provides the nexus for the child abuse insinuation. In support of this argument, the plaintiff includes an article from the Hartford Courant published May 19, 2017, which provides: "Bulkeley was again in the news when the district fired the school's head football coach after a group of players accused him of harsh treatment"; a Fox 61 news post that the plaintiff was fired and under investigation by DCF; and a news post by NBC that he was fired with a quote from a former player who had seen him "put his hands on my teammate once, but . . . he was vocally, like he'd abuse people" and that reported that the plaintiff was under investigation by DCF. None of these articles, extrinsic to the four corners of the press statement, support any claim, read in conjunction with it or not, that the plaintiff was a child abuser. Summary judgment is therefore granted as to count three.

For the foregoing reasons, the court grants the motion of the defendant, Leslie Torres-Rodriguez, for summary judgment as to the entirety of the plaintiff's complaint.

* Affirmed. *Ortiz* v. *Torres-Rodriguez*, 205 Conn. App.     ,      A.3d (2021).

[1] Bulkeley High School is one of the schools within the Hartford public school system.